## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

CHRISTOPHER T. SLATTERY, a New )
York resident, )
            )
and )
            )
            )
THE EVERGREEN ASSOCIATION, INC., )
a New York nonprofit corporation, doing )
business as Expectant Mother Care and )
EMC FrontLine Pregnancy Centers, )
            )    Case No.  1:20-cv-112 (GTS/TWD)
         Plaintiffs, )
            )    **COMPLAINT FOR DECLARATORY**
   v. )    **AND INJUNCTIVE RELIEF**
            )
ANDREW M. CUOMO, in his official )
capacity as the Governor of the State of )
New York; ROBERTA REARDON, in )
her official capacity as the Commissioner )
of the Labor Department of the State of )
New York; and LETITIA JAMES, in her )
official capacity as the Attorney )
General of the State of New York, )
            )
        Defendants. )

### Introduction

     1.     Plaintiff Christopher T. Slattery (Slattery) is President and founder of co-Plaintiff The Evergreen Association, Inc., a New York nonprofit corporation doing business as Expectant Mother Care and EMC FrontLine Pregnancy Centers (Evergreen).

     2.     Plaintiff Evergreen operates crisis pregnancy centers throughout New York City with the morally and religiously motivated mission of saving children from abortion and providing alternatives to abortion, including support for mothers who decide against abortion or adoption.

3.     Both Plaintiffs seek judicial review of a law adopted by the State of New York, popularly known as the "Boss Bill," which creates a protected class based on "reproductive health decision making" and forbids employers from making any employment-related decisions based on the "reproductive health" choices of employees, including their involvement in or advocacy of abortion or sexual relationships outside of marriage.

4.     Plaintiff Slattery is a sincere practitioner of the Catholic religion, which forbids performing, aiding, assisting or condoning abortion or infanticide under any circumstances and condemns these acts as intrinsic evils and "abominable crimes." (Vatican Council II, *Gaudium et Spes*, 51).

5.     Plaintiff Slattery, in keeping with his sincere religious beliefs, has established and enforces as Evergreen's employment policy—a policy shared by numerous other pro-life organizations—that persons who wish to be hired or remain employed by Evergreen must not obtain, assist in obtaining, or condone abortion, and must not be involved in sexual relationships outside of marriage (such as cohabitation), which the Catholic religion he professes likewise forbids and condemns as an intrinsic evil in violation of the Sixth Commandment.  Evergreen thus expects its employees, regardless of their sexual orientation, to observe sexual abstinence outside of marriage.

6.     In order to further their mission, Plaintiffs Evergreen and Slattery hire only employees, interns or volunteers ("personnel") who adhere to Plaintiffs' mission and policy of opposition to abortion and sexual relationships outside of marriage, which typically involve the use of contraception that can often have abortifacient effects. According to the challenged law, that very mission and policy would constitute unlawful employment discrimination, and Plaintiffs would be required to hire or retain, and even to avoid workplace disagreements with

personnel who advocate for legalized abortion (including the use of abortifacient contraception), have had abortions they consider morally and legally justified,  or are involved in sexual relationships outside of marriage.

7.     As to Plaintiff Slattery, the challenged law unconstitutionally violates his rights to freedom of speech, religion, and association, and unconstitutionally seeks to compel him to violate his conscience by acting against the dictates of his religion in matters of employment.

8.     The challenged law directly interferes with the mission of Plaintiffs by forbidding them from making employment decisions based on "reproductive health" decisions of employees, including the decision to have an abortion.

9.     In addition to crippling damages and attorney fee awards imposed by the law in the case of a violation, Plaintiffs' donor funding would be compromised if Plaintiffs were to agree to employ those who have abortions, use abortifacient drugs, or defy Plaintiffs' beliefs regarding sexual morality.

10.     For these reasons, the challenged law is an existential threat to Plaintiff Evergreen and a direct threat to Plaintiff Slattery, who is subject to potential personal liability as an employer or manager who vets prospective personnel for Evergreen and makes final decisions on hiring, firing or discipline.

11.     Plaintiffs seek a declaration that the Boss Bill is unconstitutional and void, as well as an injunction against enforcement of the law against Plaintiffs.

### Jurisdiction, Venue, Requested Relief and Standing

12.     This is an action for declaratory and injunctive relief under 28 U.S.C. §§ 1331, 1343(a)(4), 2201 and 2202, and in accord with Federal Rules of Civil Procedure 57 and 65.

13.     Plaintiffs seek prospective declaratory and injunctive relief against the named state officials for redress of federal constitutional violations through 42 U.S.C. § 1983.

14.     Venue lies in this district under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims detailed here occurred in this district, and also because all of the Defendants reside in this district.

15.     Plaintiffs seek a declaration that the subject state law is unconstitutional and void, as well as an injunction against enforcement of the law against Plaintiffs.

16.     Plaintiffs have standing because of the injury or threatened injury they face as a result of the challenged law. Instead of exempting organizations such as Evergreen, whose entire existence is focused on opposing and preventing abortion, and individuals such as Mr. Slattery, Defendants leave Plaintiffs exposed to costly litigation and enforcement actions by state officials, forcing Plaintiffs to defend themselves by pleading well known and established constitutional rights.

## Parties

17.     Plaintiff Evergreen is a New York nonprofit corporation headquartered in the City of Yonkers, County of Westchester, State of New York.

18.     Plaintiff Slattery is a resident of the City of Yonkers.

19.     Defendant Andrew Cuomo, sued here in his official capacity, is the Governor of the State of New York. Governor Cuomo is the chief executive of the State of New York and must "take care that the laws are faithfully executed." N.Y. Const. art. IV, § 3. Governor Cuomo has final decision-making authority over the state laws challenged herein.

20.    Defendant Letitia James, sued here in her official capacity, is the Attorney General of New York, whose office oversees the Labor Bureau and criminally enforces New York's Labor Law, including Senate Bill 660.

21.    The State's Labor Law provides that "[a]ny person who violates or does not comply with any provision of the labor law, any rule, regulation or lawful order of the [Labor Commissioner] . . . [is] guilty of a misdemeanor and upon conviction shall be punished . . . by a fine of not more than one hundred dollars." N.Y. Lab. Law § 213.

22.    Section 214 of the State's Labor Law provides that "[t]he attorney-general may prosecute every person charged with the commission of a criminal offense in violation of this chapter, or of any rule, regulation or order made thereunder, or in violation of the laws of this state, applicable to or arising out of any provision of this chapter or any rule, regulation or order made thereunder."

23.    Defendant Roberta Reardon, sued here in her official capacity, is the Commissioner of the State's Department of Labor. Commissioner Reardon is required and empowered by Section 21 of the State's Labor Law to enforce SB 660, which is part of the Labor Law.

24.    At all times and under all circumstances pertinent to the claims pleaded herein, said defendant State officials have acted and will act under color of state law.

## I.

## FACTUAL HISTORY

25.    Evergreen is legally organized in the State of New York as The Evergreen Association, Inc., which also does business as EMC FrontLine Pregnancy Centers.

26.     Evergreen was formed in October of 1985 and has operated continuously since then.

27.     Evergreen's registered office is located at 61 Lewis Parkway in the City of Yonkers, County of Westchester, State of New York.

28.     Evergreen serves women primarily in New York but also in some neighboring states.

29.     Plaintiff Evergreen has operations in Brooklyn (Kings County), The Bronx, Queens and White Plains. Evergreen has five employees currently but generally has between five and seven employees. Evergreen also has interns and volunteers, who would also apparently be covered by Local Law 20

30.     Both Plaintiff Evergreen and its founder and President, Plaintiff Slattery, profess and promote the moral and religious belief that all human life is equally valuable and deserving of protection, from fertilization to natural death. Plaintiffs believe that every abortion claims an innocent life.

31.     Both Plaintiffs also profess and promote the belief that cohabitation and other sexual relationships outside of marriage are immoral, cannot be condoned, and are a primary contributing factor to what they oppose as the intrinsic evil of abortion.

32.     Plaintiffs operate and/or head pregnancy care centers which exist to serve women considering abortion, along with their unborn children. Plaintiffs strive to provide the compassion, concern, and support necessary to enable women to carry their unborn children to term.

33.     Plaintiffs' mission is to serve primarily poor, low-income and working pregnant women in distressed conditions, many of whom are contemplating abortion. Plaintiff Evergreen

provides counseling, education, ultrasounds and information to these women during their decision-making processes in an untimely pregnancy. Counseling by Evergreen is from a life-affirming, abstinence-promoting perspective only.

34.    Plaintiffs believe that abortion compounds actual and perceived problems and difficulties for a woman, rather than resolving them.

35.    Plaintiffs believe the purpose of medical care is to heal and maintain the health of the individual and that abortion does neither for the woman or the baby.

36.    As a result, Plaintiff Evergreen does not recommend, provide, or refer for abortions, contraceptives, birth control, or abortifacient drugs or devices.

37.    To fulfill their mission, Plaintiff Slattery vets and Evergreen hires or retains only personnel who agree with, adhere to, and effectively convey Evergreen's mission and position regarding "reproductive health decisions," including but not limited to decisions related to abortion and sexual relationships outside of marriage and related use of potentially abortifacient contraception.

38.    Plaintiffs expect Evergreen personnel to abide by and agree with their position on abortion and sexual relationships outside of marriage in both their work and private life.

39.    Plaintiff Evergreen specifically asks prospective personnel if they are pro-choice or pro-life, and pro-choice candidates are not considered for employment.

40.    Evergreen advertises and otherwise makes known publicly its open employment positions (including nurses, counselors, technicians, interns and volunteers) and specifically states that it is seeking only pro-life candidates.

41.    Plaintiffs will not hire or retain, nor will Plaintiffs avoid workplace disagreements with or discipline of, personnel who refuse to act in accordance with Plaintiffs' position on

abortion and sexual relations outside of marriage and Evergreen's corresponding religiously and morally motivated employment policy.

## II.

## THE STATE OF NEW YORK'S "BOSS BILL"

### A.     The State's Non-Discrimination Laws Prior to 2019

42.     Section 296 of the State's Human Rights Law addresses civil rights in the State and creates a Division of Human Rights "to encourage programs designed to insure that every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the state; to encourage and promote the development and execution by all persons within the state of such state programs; to eliminate and prevent discrimination in employment, in places of public accommodation, resort or amusement, in educational institutions, in public services, in housing accommodations, in commercial space and in credit transactions and to take other actions against discrimination as herein provided; . . ." N.Y. Executive Law, Article 15, § 290.

43.     Prior to 2019, the State protected only the following classes: age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status. N.Y. Executive Law, Article 15, § 296(a).

44.     Pregnancy-related conditions were and are protected as part of the State's definition of "disability." N.Y. Executive Law, Article 15, § 292(21-e, 21-f).

45.     Section 296 bars discrimination in the workplace; more specifically, Section 296 makes it illegal, among other things, to make hiring or firing decisions, or compensation decisions, on the basis of one of the delineated protected classes.

B.     The "Boss Bill"

46.     On January 22, 2019, a bill titled "A.584 Jaffee/S.660 Metzger," otherwise known as the Boss Bill, passed the New York State Assembly and Senate. The law is currently in effect.

47.     The Boss Bill was accompanied by two other abortion-rights laws passed by the State. First, the Reproductive Health Act (SB 240) legalizes abortion until the birth of the child if the abortion is deemed necessary to protect the "patient's . . . health." Second, the Comprehensive Contraception Coverage Act (SB 659A) requires health insurers to provide no-cost coverage for contraceptives, including abortifacient drugs, in their health plans.

48.     The Boss Bill does not amend New York's Human Rights Law, but instead amends New York's Labor Law (Consolidated Laws of New York, Labor) by adding a new section (203-E) to Article 7 of the Labor Law.

49.     According to Bill S660, the purpose of the bill is to "prohibit employers from discriminating against employees based on the employee's or dependent's reproductive health decisions, and to provide remedies for such violations."

50.     The Boss Bill prohibits discrimination or any retaliatory action by an employer against an employee on the basis of the employee's or his or her dependent's reproductive health decision making, including, but not limited to, a decision to use or access a particular drug, device or medical service.

51.     Specifically, an employer shall not:

(a) discriminate nor take any retaliatory personnel action against an employee with respect to compensation, terms, conditions, or privileges of employment because of or on the basis of the employee's or dependent's reproductive health decision making, including, but not limited to, a decision to use or access a particular drug, device or medical service; or

(b) require an employee to sign a waiver or other document which purports to deny an employee the right to make their own reproductive health care decisions, including use of a particular drug, device, or medical service.

52.     "Reproductive health decision making" is not defined, nor is "employee," which could include Evergreen's interns or volunteers.

53.     Section 203-E(3) of the Boss Bill provides that "[a]n employer that provides an employee handbook to its employees must include in the handbook notice of employee rights and remedies under this section."

54.     Under the Boss Bill, an employee's decision to "use or access a particular drug, device or medical service," *e.g.*, the use of an abortifacient drug or having an abortion, cannot serve as a reason for adverse action by an employer.

55.     The term "reproductive health decision making" could include not only contraception and abortion, but also *in vitro* fertilization, human cloning, sterilization, sex reassignment surgery, surrogacy, and other highly controversial procedures.

56.     "Reproductive health decision making" appears to go far beyond mere use of a drug or service. A decision as to reproductive health could be a decision to support or publicly advocate for abortion rights.

57.     The Boss Bill provides employees a private right of action to enforce its requirements against employers alleged to have violated its provisions.

58.     The Boss Bill subjects violators to damages, including back pay and attorney fees, injunctive relief, reinstatement, and liquidated damages.

59.     Section 214 of New York's Labor Law makes violation of any rule within the same chapter as the Boss Bill a criminal offense that may be prosecuted by the State's Attorney General.

60.     Section 21 of New York's Labor Law provides that "[t]he commissioner . . . shall enforce all the provisions of [Chapter 31, the Labor Law] and may issue such orders as he finds necessary directing compliance with any provision of this chapter, except as in this chapter otherwise provided." N.Y. Lab. Law § 21.

61.     The Labor Law provides that "[t]he attorney-general may prosecute every person charged with the commission of a criminal offense in violation of this chapter, or of any rule, regulation or order made thereunder, or in violation of the laws of this state, applicable to or arising out of any provision of this chapter or any rule, regulation or order made thereunder." N.Y. Lab. Law § 214.

62.     The Attorney General is required to "[p]rosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state." N.Y. Exec. Law § 63(1).

63.     The legislative history of the Boss Bill, as well as the text of the bill itself, offer no examples of adverse employment consequences caused by any employer decisions in light of employee reproductive health choices.

64.     When directly questioned as to whether discrimination on the basis of reproductive health decisions was actually occurring in New York State, Assemblywoman Ellen Jaffee, the main sponsor of the Boss Bill, cited no examples of discrimination on the basis of the vague concept of "reproductive health decision making."

### III.

### <u>PLAINTIFFS' NEED FOR RELIEF</u>

65.     Plaintiffs are subject to the Boss Bill.

66.     The Boss Bill forbids Plaintiffs to make any employment decision or take any employment action based on the "reproductive health decision making" of personnel.

67.     The challenged law thus penalizes fundamental tenets of Evergreen's mission by restricting Plaintiffs' freedom to associate with like-minded individuals and by forbidding them to enforce employment standards of conduct in accordance with their moral, religious and organizational beliefs regarding abortion, contraception, and sexual morality.

68.     The Boss Bill also prevents Plaintiffs from considering and acting on an employee's decision to support or publicly advocate for abortion rights or the use of abortifacient drugs and potentially punishes as "workplace harassment" even attempts to remonstrate with personnel who reveal that they reject and oppose Plaintiffs' moral and religious position on abortion, abortifacient drugs and sexual morality and thus will not abide by Evergreen's employment policies.

69.     The Boss Bill impermissibly chills Plaintiffs' speech with the threat of damages, injunctions, attorney's fee awards and even criminal prosecution.

70.     The Boss Bill prohibits Plaintiffs from conveying their message to their personnel regarding, among other things, abortion, contraception, and sexual morality.

71.     The Boss Bill further deters Plaintiffs from conveying their pro-life messages and employment requirements to potential employees and the public more generally.

72.     The Boss Bill impermissibly compels speech by requiring any employee "handbook" that Plaintiffs might distribute—including, apparently, any written employment policy statement—to "include… notice of employee rights and remedies under this section."

73.     Enforcement of the Boss Bill will irreparably harm Plaintiffs by infringing on their First Amendment rights to expressive association and free speech, as well as their Fourteenth Amendment right to due process, because the law is void for vagueness.

74.     If Plaintiffs were to comply with the Boss Bill, it would undermine and compromise Plaintiffs' pro-life mission, messages, and purpose, and compel Plaintiffs to associate with employees who do not share such mission, messages, and purpose.

75.     The Boss Bill hinders Plaintiffs' ability to hire new employees due to the uncertainties surrounding how to find, recruit, and hire new employees consistent with their pro-life mission, messages, and purpose.

76.     Plaintiffs have no choice but to continue to operate in a manner consistent with their mission and religious and moral beliefs, because complying with the Boss Bill would compel them to violate their moral and religious core principles, which they cannot do.

77.     Plaintiffs intend to take adverse employment action against personnel who choose to procure abortions or otherwise violate their organizational policies regarding abortion and sexual morality.

78.     Plaintiffs fear the harms of prosecution, enforcement actions, and private suits under the Boss Bill if they fail to comply.

79.     The Boss Bill's penalties would destroy Plaintiffs' ability to continue their pro-life mission.

80.     The Boss Bill is a threat to Evergreen's existence.

81.     The Boss Bill coerces Plaintiffs to betray their moral and religious beliefs and their mission of preventing abortion and helping women in crisis pregnancies.

82.     Plaintiffs face a credible threat of enforcement of the Boss Bill and should not be required to await and undergo an enforcement action in order to seek relief.

83.     The impact of chilling and deterring Plaintiffs from exercising their federal constitutional rights constitutes immediate and irreparable harm to Plaintiffs caused by the Boss Bill.

84.     Unless the Boss Bill is declared unlawful and its enforcement enjoined, Plaintiffs will continue to suffer irreparable injury.

85.     The Boss Bill is causing serious ongoing hardship to Plaintiffs concerning their employment decisions. Plaintiffs need relief now.

86.     Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights caused by the Boss Bill.

## COUNT I

### VIOLATION OF RIGHT TO ASSOCIATION
### UNDER THE FIRST AMENDMENT

87.     Plaintiffs repeat and re-allege Paragraphs 1 through 86 of this Complaint.

88.     The First Amendment recognizes and protects the right to freedom of association.

89.     The First Amendment protects the right of persons to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

90.     Plaintiffs stress the dignity and value of human life, including opposition to abortion and advocacy of sexual abstinence outside of marriage, and they and Evergreen's personnel associate with each other for the purpose of more effectively expressing that viewpoint. Plaintiffs' insistence on like-mindedness in this common cause among Evergreen's personnel is constitutionally protected to allow them to engage in free speech and association.

91.     Plaintiffs Slattery and Evergreen both also engage in protected association when they counsel clients on alternatives to abortion, which they believe is a grave moral evil, and on the need for sexual abstinence outside of marriage to avoid the moral evil of extra-marital sexual relations, which often lead to abortion.

92.     The Boss Bill restricts the freedom of organizations and individuals such as Plaintiffs to form expressive associations of those who share a common commitment to Plaintiffs' moral and religious point of view. The right to associate necessarily includes the right to exclude from association.

93.     The State, acting through the named defendants in their official capacities, violates Plaintiffs' right to freedom of association by denying them the right to organize their staff, to communicate to the staff, to correct, discipline or terminate staff who reject Plaintiffs' moral and religious position, and to circulate written materials in accordance with their beliefs that abortion is a grave moral wrong and that sexual abstinence outside of marriage is a grave moral duty.

94.     Forcing Plaintiffs to hire, retain, refrain from disciplining or terminating, or even to refrain from disagreeing with personnel who do not share Plaintiffs' beliefs—which would potentially constitute "workplace harassment" in violation of the Boss Bill—would fatally compromise Plaintiffs' pro-life message and mission.

95.     The Boss Bill is overbroad. It is not tailored at all, much less narrowly tailored, to further any governmental interest, and even if the Defendants could proffer an interest of some kind, the law does not represent the least restrictive means of achieving any such interest.

96.     The Boss Bill chills and imminently threatens wholesale violation of Plaintiffs' First Amendment right to freedom of association.

97.     The Boss Bill is unconstitutional on its face and as applied.

98.     Absent declaratory and injunctive relief against application and enforcement of the Boss Bill, Plaintiffs will suffer irreparable harm.

## COUNT II

### VIOLATION OF THE FREE SPEECH
### CLAUSE OF THE FIRST AMENDMENT

99.     Plaintiffs repeat and re-allege Paragraphs 1 through 98 of this Complaint.

100.    The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits abridging speech.

101.    The Boss Bill restricts Plaintiffs' right to free speech because it compels Plaintiffs to speak a message contrary to their moral and religious beliefs not only to their current employees, but also to prospective employees and the public in general.

102.    The Boss Bill's discrimination prohibitions would cause Plaintiffs to limit and censor their own constitutionally guaranteed speech regarding abortion and the dignity and value of life, which expression could otherwise be used as evidence of discrimination under the Boss Bill, as well as evidence of a hostile work environment and thus job harassment.

103.    Plaintiffs' speech is further suppressed by restricting them from expressing preferences as to having employees who share common beliefs as to abortion, and from outwardly espousing pro-life and pro-chastity values in the workplace.

104.    The rights of Plaintiffs, in an employment context, to discuss with their employees and applicants for employment the subject of abortion and sexual morality, including abstinence from sexual relations outside of marriage, is pure speech protected under the First Amendment.

105.    By punishing said speech and expressive conduct, the State has interfered with Plaintiffs' First Amendment right to freedom of speech and expressive conduct.

106.    The Boss Bill chills and imminently threatens wholesale violation of Plaintiffs' First Amendment right to freedom of speech and expressive conduct.

107.    Because it is substantially overbroad, the Boss Bill chills and otherwise deprives Plaintiffs and third parties not before the Court from engaging in expressive activities concerning abortion, as guaranteed by the Free Speech Clause.

108.    The Boss Bill constitutes a prior and ongoing restraint on Plaintiffs' speech in violation of the Free Speech Clause.

109.    The content-based restrictions promulgated in the Boss Bill are not supported by a compelling governmental interest and are not narrowly tailored to accomplish any compelling governmental interest.

110.    The First Amendment protects the freedom of speech, including the right of groups to speak out and to thereby persuade all who will listen to refrain from engaging in conduct that they consider gravely immoral.

111.    The Boss Bill discriminates against Plaintiffs' speech on the basis of their viewpoint regarding what it describes as "reproductive health decisions."

112.    The Boss Bill is therefore subject to strict scrutiny, which it cannot survive, because it is not narrowly tailored to accomplish any compelling governmental interest.

113.    The Boss Bill is unconstitutional on its face and as applied.

114.    As a direct and on-going result of the State officials' abridgment of Plaintiffs' Free Speech rights, as alleged above, Plaintiffs are suffering irreparable harm for which there is no adequate remedy at law.

## COUNT III

### VIOLATION OF THE FREE EXERCISE OF RELIGION CLAUSE
### OF THE FIRST AMENDMENT

115.    Plaintiffs repeat and re-allege Paragraphs 1 through 114 of this Complaint.

116.    The Free Exercise Clause of the First Amendment prohibits the government from substantially burdening an entity's or individual's exercise of religion.

117.    The Free Exercise Clause protects organizations as well as individuals from government-imposed burdens on religious exercise.

118.    Plaintiffs are a pro-life and religious organization and its pro-life, religious founder and President. Both plaintiffs can and do exercise religion, including by promoting their pro-life message and services which are rooted in the religious conviction that all life is sacred from the moment of conception to the moment of natural death and that sexual relations are impermissible outside of marriage.

119.    The First Amendment to the United States Constitution protects Plaintiffs' rights to speak about, publish, and freely exercise their religious beliefs.

120.    The First Amendment prevents the government from interfering with Plaintiffs' mission and religious beliefs.

121.    The First Amendment requires Defendants to act in a neutral and generally applicable manner toward Plaintiffs and their religious beliefs and practices, and bars even subtle departures from neutrality on matters of religion. This First Amendment protection applies upon even slight suspicion that state actions stem from animosity to religion or distrust of its practices.

122.    The First Amendment protects Plaintiffs from government hostility, targeting, and discrimination because of their religious beliefs and practices.

123.    Plaintiffs have sincerely held religious beliefs that motivate and require them to operate Evergreen in accordance with religious teachings they view as authoritative and binding in conscience.

124.    Plaintiffs exercise freedom of religion by providing of pro-life services and counseling, and the communication of comprehensive information regarding pregnancy, abortion, contraception, adoption, and other related issues.

125.    Plaintiffs' exercise of religion includes employing and advertising open positions to individuals who share and live out Plaintiffs' organizational beliefs regarding reproductive health decisions, and also seeking to hire personnel who share and live out those organizational beliefs regarding such morally fraught decisions.

126.    Plaintiffs' religious beliefs, which permeate and define Evergreen's organizational purposes, require that employees adhere to standards of conduct regarding reproductive health decisions, including, but not limited to, refraining from personally procuring and facilitating abortions and using certain abortion-causing drugs and devices misrepresented as "contraceptive."

127.    The Boss Bill is not neutral or generally applicable because it disfavors Plaintiffs' religious beliefs and targets them for punishment, imposing special disabilities on the basis of Plaintiffs' stating or acting according to officially disfavored religious views as opposed to the officially favored "reproductive health decisions" of those who support abortion, abortifacient contraception and sexual relations outside of marriage.

128.    The Boss Bill is not neutral or generally applicable because its legislative history reveals that it is intended to target religious organizations by prohibiting them from maintaining employment policies and standards of conduct in accordance with their religious beliefs.

129.    The Boss Bill is not neutral or generally applicable because its legislative history reveals that it was passed specifically to prevent religious employers, including even churches or priests, from making any employment decision based on religious opposition to abortion, abortifacient contraception, sexual relations outside of marriage or an employee's advocacy thereof.

130.    The Boss Bill was designed precisely to prevent Plaintiffs and other like organizations from operating their organizations in accord with their religiously motivated pro-life missions and beliefs.

131.    The application of the Boss Bill to Plaintiffs interferes with their ability to carry out their respective missions and convey their religious beliefs, precisely because they hold pro-life views regarding abortion and sexual morality.

132.    The application of the Boss Bill to Plaintiffs imposes a substantial burden on their religious exercise and coerces them to change or violate their religious beliefs, under pain of state enforcement actions and potentially crippling private lawsuits.

133.    The Boss Bill also infringes on the hybrid of Plaintiffs' free exercise, free speech, and expressive association rights.

134.    The First Amendment's Free Exercise Clause requires the government to satisfy strict scrutiny before it may burden the exercise of religion.

135.    Because the Boss Bill violates Plaintiffs' free exercise rights, it must further a compelling interest in a narrowly tailored way.

136.    The Boss Bill does not further any compelling, substantial, legitimate, or rational interest, and Defendants lack any evidence to demonstrate the existence of such an interest.

137.    In fact, Defendants have failed to offer any justification sufficient to burden Plaintiffs' free exercise of religion by means of the Boss Bill.

138.    The Boss Bill is not tailored at all, much less narrowly tailored, to further any governmental interest, and even if the state could proffer an interest of some kind, the law does not represent the least restrictive means of achieving any such interest.

139.    The Boss Bill, as applied, violates Plaintiffs' rights under the Free Exercise Clause, as well as the hybrid of their free exercise, free speech, and expressive association rights under the First Amendment, as incorporated and applied to the States through the Fourteenth Amendment.

140.    As a direct and ongoing result of the defendant State officials' abridgment of Plaintiffs' Free Exercise rights, as alleged above, Plaintiffs are suffering irreparable harm for which there is no adequate remedy at law.

### COUNT IV

#### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

141.    Plaintiffs repeat and re-allege Paragraphs 1 through 140 of this Complaint.

142.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs due process of law.

143.    The Fourteenth Amendment prohibits State officials from penalizing association and other behavior based on vague standards. This is especially so where the expression or conduct is subject to criminal sanction.

144.    A law must provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and the law must provide explicit standards to law enforcement personnel, judges and juries.

145.    Vague laws trap the unwary by not providing fair notice about what is permitted and what is prohibited. Such laws also provide a platform for spurious and agenda-driven complaints and prosecutions. Explicit standards are required to prevent arbitrary and discriminatory application of the law.

146.    A vague law is particularly troublesome where First Amendment freedoms are at stake because it chills the exercise of those freedoms by causing citizens to "steer far wider than the unlawful zone" as opposed to when "the boundaries of the forbidden area were clearly marked." *Grayned v. Rockford*, 408 U.S. 104, 108-09 (1972). Laws that interfere with First Amendment freedoms require a high level of specificity, and laws with criminal penalties require special scrutiny.

147.    The Boss Bill's key but undefined term "reproductive health decision making" is both vague and sweeping in its scope. The term appears to be so broad that it applies not just to a medical decision but also to political speech or activism regarding abortion, the use of abortifacients as "contraception," and even to those who advocate for or perform abortions.

148.    The term "reproductive health decision making" could include not only contraception and abortion, but also *in vitro* fertilization, human cloning, sterilization, sex reassignment surgery, surrogacy, and other highly controversial procedures that violate Plaintiffs' sincerely held moral and religious beliefs.

149.    The Boss Bill also fails to define "employee," "employer," and a number of other key terms necessary for complete interpretation, so that even volunteers and interns would fall under its overly broad and vague terms.

150.    The Boss Bill is void for vagueness because it fails to provide adequate notice to Plaintiffs and third parties not before the Court of how it is enforceable and by what means, which will lead to arbitrary and agenda-driven enforcement. This is especially so when enforcement is by criminal sanction.

151.    The Boss Bill is void for vagueness, both on its face and as applied to Plaintiffs, and thus it violates the Due Process Clause of the Fourteenth Amendment.

152.    Absent declaratory and injunctive relief against application and enforcement of the Boss Bill, Plaintiffs will suffer irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court:

a.    Declare the Boss Bill, including, but not limited to, Section 203-E which it added to Article 7 of the Labor Law of the State of New York, unlawful, invalid, unenforceable, null and void, and otherwise of no force and effect for some or all of the reasons stated above;

b.    Issue an injunction prohibiting the Defendants and the State of New York from enforcing the Boss Bill against Plaintiffs, as well as against others not before the Court where the said laws are facially unlawful;

c.    Award Plaintiffs the costs of this action, reasonable attorney fees and expert fees pursuant to 42 U.S.C. 1988, and as otherwise provided by law; and

d.    Grant such other and further relief as the Court shall deem necessary and just.

Dated: January 31, 2020

CHRISTOPHER A. FERRARA, ESQ.
(Bar No. 51198)
148-29 Cross Island Parkway
Whitestone, Queens, New York 11357
Telephone: (718) 357-1040
cferrara@thomasmoresociety.org
Special Counsel to the
**Thomas More Society**
309 West Washington Street, Suite 1250
Chicago, Illinois, 60606

J. Matthew Belz #MO-61088
Clayton Plaza Law Group
112 South Hanley, Second Floor
St. Louis, Missouri 63105-3418
Phone: (314) 726-2800
Fax: (314) 863-3821
jmbelz@olblaw.com
*Pro hac vice application pending*

*Attorneys for Plaintiffs*