UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER T. SLATTERY, a New York resident, and THE EVERGREEN ASSOCIATION, INC., a New York nonprofit corporation, doing business as Expectant Mother Care and EMC FrontLine Pregnancy Centers,

|  |  |
|---|---|
| *Plaintiffs*, | 20-CV-0112 |
| -against- | |
| | TJM/DJS |

KATHY HOCHUL, in her official capacity as the Governor of the State of New York; ROBERTA REARDON, in her official capacity as the Commissioner of the Labor Department of the State of New York; and LETITIA JAMES, in her official capacity as the Attorney General of the State of New York,

*Defendants*.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 AND N.D.N.Y. LOCAL RULE 56.1(A)

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
Kathy Hochul, Roberta Reardon, and Letitia James in their Official Capacities
The Capitol
Albany, New York  12224
Telephone:  (518) 776-2608
Fax:  (518) 915-7738 (Not for service of papers)

Adrienne J. Kerwin
Assistant Attorney General, of Counsel

Noah D. Coates
Attorney General Legal Intern, on the Brief            Dated: April 26, 2024

**Table of Contents**

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

NEW YORK'S PROTECTION OF PRIVACY AND PERSONAL DECISIONS...................2

LABOR LAW § 203-E.......................................................................................................2

STATEMENT OF FACTS..................................................................................................3

PROCEDURAL HISTORY.................................................................................................5

STANDARD OF REVIEW.................................................................................................6

ARGUMENT......................................................................................................................7

POINT I: PLAINTIFF'S CLAIM IS NOT JUSTICIABLE....................................7

    A.    Evergreen Cannot Demonstrate that it Intends to Engage in a
Course of Conduct Proscribed by Labor Law § 203-e...............9

    B.    Evergreen Cannot Establish a Credible Threat of Prosecution
Under § 203-e.....................................................................10

POINT II: PLAINTIFF CANNOT ESTABLISH A VIOLATION OF ITS FIRST
AMENDMENT RIGHT TO FREEDOM OF ASSOCIATION..................13

    A.    The Freedom of Expressive Association Does Not Apply
to the Employer-Employee Relationship.............................13

    B.    Even if, Arguendo, the Freedom of Association Applies
to the Employer-Employee Relationship, Plaintiff Cannot
Establish a Violation of that Right......................................18

        1.    Section 203-e Does Not Significantly Burden
Evergreen's Ability to Advocate its Viewpoints............19

        2.    Even if Strict Scrutiny Applies, Plaintiff Cannot
Establish a First Amendment Violation......................22

CONCLUSION................................................................................................26

i

## Table of Authorities

CASES                                                                           Page(s)

*AMSAT Cable Ltd. v. Cablevision of Conn.*,
    6 F. 3d 867, 872 (2d Cir. 1993)..........................................................................................8

*Am. Booksellers Found. v. Dean*,
    342 F. 3d 96 (2d Cir. 2003)……………………………………………………10

*Anderson v. Liberty Lobby, Inc*.,
    477 U.S. 242 (1986)………………………………………………………….6

*Aron v. Becker*,
    48 F. Supp. 3d 347 (N.D.N.Y. 2014)………………………………………...7

*Babbit v. United Farm Workers National Union*,
    442 U.S. 289 (1979)………………………………………………………...11

*Bear Creek Bible Church v. EEOC*,
    571 F. Supp. 3d 571 (N.D. Tex. 2021)…………………………………15-16

*Billard v. Charlotte Catholic High Sch.*,
    No. 3:17-cv-00011, 2021 U.S. Dist. LEXIS 167418
    (W.D.N.C. Sept. 3, 2021), *appeal filed*, No. 3:17-cv-00011,
    ECF No. 73 (April 18, 2022), *appeal stayed by* No. 22-1440,
    2023 U.S. App. LEXIS 9679 (4th Cir. Apr. 21, 2023)………………………..16

*Board of Directors of Rotary Int'l. v. Rotary Club of Duarte*,
    481 U.S. 537 (1987)………………………………………………………...15

*Boelter v. Hearst Communs*.,
    192 F. Supp. 3d 427 (S.D.N.Y. 2016)………………………………………….2

*Boy Scouts of America v. Dale*,
    530 U.S. 640 (2000)………………………………………………………...passim

*Braidwood Mgmt. v. EEOC*,
    No. 22-10145, 2023 U.S. App. LEXIS 15378 (5th Cir. June 20, 2023)…………………16

*Christian Legal Soc'y v. Walker*,
    453 F. 3d 853 (7th Cir. 2006)……………………………………………………25

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)………………………………………………………….7

*CompassCare v. Cuomo,*
   465 F. Supp. 3d 122 (N.D.N.Y. 2020)……………………………………………11, 24

*Dobbs v. Jackson Women's Health Org.,*
   597 U.S. 215 (2022)………………………………………………………………...2, 23

*Fighting Finest v. Bratton,*
   95 F. 3d 224 (2d Cir. 1996)……………………………………………………………19

*Fitzgerald v. Roncalli High Sch.,*
   No. 1:19-cv-04291, 2021 U.S. Dist. LEXIS 206826
   (S.D. Ind. March 31, 2021)……………………………………………………………16

*Griswold v. Connecticut,*
   381 U.S. 479 (1965)………………………………………………………………...23

*Hedges v. Obama,*
   724 F. 3d 170 (2d Cir. 2013)……………………………………………………..11

*Hishon v. King & Spalding,*
   467 U.S. 69, 78 (1984)……………………………………………………………14, 16

*Hope v. Perales,*
   83 N.Y.2d 563 (1994)…………………………………………………………………23

*Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts,*
   852 F. 3d 178 (2d Cir. 2017)……………………………………………………13, 22

*Jews for Jesus, Inc. v. Jewish Community Relations Council, Inc.,*
   968 F.2d 286 (2d Cir. 1992)……………………………………………………...24

*Kerzer v. Kingly Mfg.,*
   156 F. 3d 396 (2d Cir. 1998)……………………………………………………………7

*Kraham v. Lippman,*
   478 F. 3d 502 (2d Cir. 2007)……………………………………………………..22

*Lorillard Tobacco Co. v. Reilly,*
   533 U.S. 525 (2001)………………………………………………………………...14

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)………………………………………………………………7, 8

*McMahon v. World Vision, Inc.,*
   No. C21-0920JLR, 2023 U.S. Dist. LEXIS 211417 (W.D. Wash. Nov. 28, 2023)……...16

*NAACP v. Alabama* ex rel. *Patterson*,
    357 U.S. 449 (1958)……………………………………………………………...17

*Nat'l Org. for Marriage, Inc. v. Walsh*,
    714 F. 3d 682 (2d Cir. 2013)…………………………………………..passim

*New Hope Family Servs. v. Poole*,
    966 F. 3d 145 (2d Cir. 2020)………………………………………………18, 20

*New York Civil Liberties Union v. Grandeau*,
    528 F. 3d 122 (2d Cir. 2008)……………………………………………………8

*New York State Club Assn. v. City of New York*,
    487 U.S. 1 (1988)……………………………………………………………...14

*Nix v. WLCY Radio/Rahall Commc'ns*,
    738 F. 2d 1181 (11th Cir. 1984)……………………………………………17

*Our Lady's Inn v. City of St. Louis*,
    349 F. Supp. 3d 805 (E.D. Mo. 2018)……………………………………...16

*Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist., Wisconsin*,
    No. 23–1534, 2024 WL 981436 (7th Cir. Mar. 7, 2024)…………………………7

*Roberts v. United States Jaycees*,
    468 U.S. 609 (1984)…………………………………………………………passim

*Richardson v. Northwest Christian Univ.*,
    242 F. Supp. 3d 1132 (D. Or. 2017)………………………………………...16

*Roe v. City of Waterbury*,
    542 F. 3d 31 (2d Cir. 2008)…………………………………………………..6

*Sanitation & Recycling Indus., Inc. v. City of New York*,
    107 F. 3d 985 (2d Cir. 1997)……………………………………………...23

*Silva v. Farrish*,
    47 F. 4th 78 (2d Cir. 2022)………………………………………………9, 10

*Slattery v. Cuomo*,
    531 F. Supp. 3d 547 (N.D.N.Y. 2021)………………………………2, 20, 21

*Slattery v. Hochul*,
    61 F. 4th 278 (2d Cir. 2023)……………………………………………...passim

*Starkey v. Roman Catholic Archdiocese of Indianapolis*,
  496 F. Supp 3d 1195 (S.D. Ind. 2020)……………………………………………..15-16

*Steffel v. Thompson*,
  415 U.S. 452 (1974)………………………………………………………………10-11

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)………………………………………………………………….9

*Tabbaa v. Chertoff*,
  509 F. 3d 89 (2d Cir. 2007)……………………………………………13, 19, 22

*Thomas v. Union Carbide Agric. Prods. Co.*,
  473 U.S. 568 (1985)………………………………………………………………...8, 11

*United Reporting Publ'g Corp. v. California Highway Patrol*,
  146 F. 3d 1133 (9th Cir. 1998)……………………………………………………….2

*Vt. Right to Life Comm. v. Sorrell*,
  221 F. 3d 376 (2d Cir. 2000)………………………………………………………..10

*Wagner v. Swarts*,
  827 F. Supp. 2d 85 (N.D.N.Y. 2011)………………………………………………..7

*West Coast Hotel Co. v Parrish*,
  300 U.S. 379 (1937)………………………………………………………………16-17

*Wisconsin v. Mitchell*,
  508 U.S. 476 (1993)………………………………………………………………...14


**U.S. CONSTITUTION**

U.S. Const. art III……………………………………………………………………….8

**STATE STATUTES**

N.J. Stat. Ann.
  10:5-4 ............................................................................................................15
  10:5-5 ............................................................................................................15

N.Y. Labor Law
  Art. 7 ............................................................................................................15
  § 191 ............................................................................................................15, 17
  § 203-e ............................................................................................................ passim
  § 203-e(1) ............................................................................................................3

§ 203-e(2)(a) ...........................................................................................................2, 3
§ 203-e(2)(b) ...............................................................................................................3
§ 203-e(7) ..................................................................................................................26
§ 652 ....................................................................................................................15, 17

N.Y. Pub. Health Law
§ 2599-bb .............................................................................................................2, 23

**RULES**

29 C.F.R. pt. 19010 ..............................................................................................15, 17

Federal Rules of Civil Procedure
Rule 12(b)(6) ......................................................................................................5, 6, 13
Rule 30(b)(6) ........................................................................................................4, 10
Rule 56 .........................................................................................................................1
Rule 56(a) ....................................................................................................................6

N.D.N.Y. Local Rules

Rule 56.1(a) .................................................................................................................1

**MISCELLANEOUS**

*CompassCare, et al. v. Hochul*, et al., 22-951(L), Brief of Amici Curiae 20,
ECF No. 85 (2d Cir. July 13, 2023)…………………………………………...18
Hans Allhoff, *Membership and Messages: The Il(logic) of Expressive Association Doctrine*,
15 U. Pa. J. Const. L. 1455, 1456 (2013)……………………………………...21
Laws 2019, ch. 1, § 1…………………………………………………………...2, 23
N.Y.S. Assembly Memorandum in Support of Legislation, Bill No. A584………………………3
N.Y.S Senate Sponsor Memorandum, Bill No. S660……………………………………..3
N.Y.S. Assembly Debate on Assembly Bill No. A00584, Jan. 22, 2019…………………………24

Defendants, Kathy Hochul, in her official capacity as Governor of the State of New York, Roberta Reardon, in her official capacity as Commissioner of the New York State Department of Labor, and Letitia James, in her official capacity as Attorney General of the State of New York ("Defendants"), respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1(a).

## PRELIMINARY STATEMENT

In November 2019, New York State enacted legislation to prohibit employers from discriminating against employees for exercising their fundamental rights to privacy, including the right to private medical information. N.Y. Labor Law § 203-e. Plaintiff, The Evergreen Association, Inc, doing business as Expectant Mother Care and EMC FrontLine Pregnancy Centers ("Evergreen" or "Plaintiff")[1], challenges this statute, claiming that it has the right to hire and fire employees on the basis of personal medical decisions. Complaint, ECF No. 1 ("Compl."), generally. Notwithstanding that the law seeks to protect employees' fundamental privacy interests and protect against workplace discrimination, Evergreen, in this pre-enforcement challenge, seeks declaratory and injunctive relief claiming that Labor Law § 203-e ("the Statute" or "§ 203-e") violates its First Amendment right to expressive association[2] both on its face and as-applied.[3] Compl., ¶¶ 87-98. *Slattery v. Hochul*, 61 F. 4th 278, 289 (2d Cir. 2023). Because Evergreen cannot establish that § 203-e severely burdens its expressive association rights, Defendants' motion should be granted.

---

[1] Plaintiff Christopher T. Slattery passed away on November 22, 2023. Suggestion of Death, ECF No. 49.
[2] Plaintiff's remaining claims were dismissed. *Slattery v. Hochul*, 61 F. 4th 278 (2d Cir. 2023).
[3] Although the Complaint purports to allege both a facial and as-applied challenge, Compl. ¶ 97, § 203-e has never been applied to Evergreen. *See* p. 8 below. Therefore, Evergreen's claim is more aptly described as a pre-enforcement challenge, as discussed at Point I.

**NEW YORK'S PROTECTION OF PRIVACY AND PERSONAL DECISIONS**

A state may legislate to protect its citizens' rights to privacy and autonomy, *Boelter v. Hearst Communs.*, 192 F. Supp. 3d 427, n.15 (S.D.N.Y. 2016) (quoting *United Reporting Publ'g Corp. v. California Highway Patrol,* 146 F. 3d 1133, 1138 (9th Cir. 1998)), including one's right to abortion care. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 300 (2022) (confirming that "the States may regulate abortion"). Toward that end, New York enacted legislation to protect its citizens' right to abortion care. N.Y. Pub. Health Law § 2599-bb. In connection with its passage of § 2599-bb, the legislature stated, "that it is the public policy of New York State that every individual possesses a fundamental right of privacy and equality with respect to their personal reproductive decisions and should be able to safely effectuate those decisions, including by seeking and obtaining abortion care, free from discrimination in the provision of health care." Laws 2019, ch. 1, § 1 (eff. Jan. 22, 2019).

**LABOR LAW § 203-e**

Labor Law § 203-e furthers New York's interests "in protecting both an individuals' right to privacy and autonomy as it relates to health-care decisions surrounding reproduction" and its interest in "protecting against workplace discrimination." *Slattery v. Cuomo*, 531 F. Supp. 3d 547, 562 (N.D.N.Y. 2021), *rev'd on other grounds sub nom. Slattery v. Hochul*, 61 F. 4th 278 (2d Cir. 2022). Specifically, the statute prohibits employers from accessing employees' personal reproductive health care information or taking any discriminatory or retaliatory employment action against an employee[4] based on reproductive health care decisions made by that employee or their

---

[4] The statute on its face applies to "employee[s]" and their dependents. N.Y. Labor Law § 203-e(2)(a). Accordingly, the Statute can plausibly be read as not applying to prospective applicants for employment at all. However, the court need not decide the scope of the statute's applicability to applicants, versus employees, because Plaintiff has admitted that it would employ and has hired employees who have had abortions, and that it does not ask questions relating to

dependent, including decisions to use, or access, certain drugs, devices or medical services. N.Y. Labor Law § 203-e(1) & (2)(a). To that end, an employer may not require that an employee waive their right to make their own reproductive health care decisions.[5] *Id*. at § 203-e(2)(b).

The purpose of Labor Law § 203-e is straightforward and clear: to prevent employers from discriminating against employees based on "an employee's or an employee's dependent's reproductive health decision making." N.Y.S. Assembly Memorandum in Support of Legislation, Bill No. A584, ECF No. 22-2; N.Y.S Senate Sponsor Memorandum, Bill No. S660, ECF No. 22-3. The statute furthers two longstanding and compelling State interests: (1) the interest in protecting individuals' rights to make private health care and family planning decisions; and (2) the interest in protecting the privacy of each citizen's medical records and health information, both in the context of employment. Nowhere does § 203-e prohibit employers from discriminating against employees on the basis of their beliefs.

## STATEMENT OF FACTS

Plaintiff Evergreen is a non-profit entity, doing business as Expectant MotherCare and EMC FrontLine Pregacy Centers, that operates "crisis pregnancy centers" in New York City whose mission is to deter pregnant individuals from obtaining abortions. Compl. ¶ 2. Unlike similar entities whose services consist of "lay counseling" provided by someone "trained by a

---

reproductive health decision-making of either applicants or existing employees regarding their past or current conduct. The court may therefore assume without deciding here that the statute applies equally to prospective employees.

[5] There is no evidence that Evergreen requires employees to waive their rights to make their own reproductive health care decisions.  After Mr. Slattery's death, Evergreen employees were asked to, and did, sign a document entitled "EMC Staff Statement of Position, Faith & Principle," Deposition of James annexed to the Declaration of Adrienne J. Kerwin ("Kerwin Decl.") at Exh. A,  73-74; EMC Staff Statement of Position, Faith & Principle," Kerwin Decl. Exh. F ("EMC Staff Statement"). This document does not contain any waiver of rights other than to commit to a monogamous marriage and sexual activity only within marriage. EMC Staff Statement 4.

pregnancy center or other organization," Deposition of James Harden[6] ("Harden Dep.")[7] 46, Evergreen provides a "medical model of service" to women facing unplanned pregnancies. *Id*. 43-44. It focuses on the medical aspects of pregnancy.[8] *Id*. 47, 108.

The services provided by Evergreen include the confirmation of pregnancy by urine test, *id*. 38; "ultrasound scans for the purpose of pregnancy diagnosis when a patient presents with a positive pregnancy test," *id*. 31, 38; discussion of health history, *id*. 38; discussion of the woman's "intentions" with respect to the pregnancy, *id*. 38, 39; and referrals to resources in the community to make her "less vulnerable to the abortion decision, in terms of different types of support, material assistance, counseling . . . housing, et cetera." *Id*. 38. Evergreen's six employees, *id*. 65, include two ultrasonographers who perform the scans used to diagnose pregnancy, *id*. 22, 31, 52-53 and two Licensed Practical Nurses ("LPNs") who learn the patient's health history and intentions and provides the referrals to community resources. *Id*. 23-24, 37-39, 41.

Evergreen's other two employees include (1) a person that handles "material assistance" by managing donations of supplies that are distributed to the community, and does not interact with patients, Harden Dep. 47-48, 56-58, and (2) a scheduler or "counselor" who answers the telephone, schedules appointments, receives patients into Evergreen's Bronx office and "talks through . . . the patient's current situation and . . . identif[ies] . . . the kind of risk factors . . . that are driving her to consider abortion, and then to find…suitable community resources to help

---

[6] Rev. James Harden, the current president of Evergreen, was produced as Evergreen's Fed. R. Civ. P. 30(b)(6) witness.

[7] A copy of the transcript from the Deposition of James Harden is annexed as Exhibit A to the Declaration of Adrienne J. Kerwin ("Kerwin Decl.").

[8] Evergreen does not act "like a social worker" and help patients "navigate" the "decision-making process" in connection with abortion. Harden Dep. 46-47.

alleviate some of those . . . risk factors." *Id.* 49, 61-62; *see also id*. 93-94. All six of Evergreen's employees are part-time. *Id*. 53-54, 63.

Evergreen's activities and mission center on abortion: According to its president, birth control is "not really an issue" for Evergreen because its focus is on unplanned pregnancies. Harden Dep. 43. Evergreen only provides information about "the abortifacient nature of certain types of birth control" if a patient "specifically asks about it." *Id*. As to abortion, Evergreen admits it has hired people who have had abortions. *Id.* 92. As articulated by Evergreen's president, "we don't expect to hire perfect people. We don't expect to hire people who haven't had abortions. We don't expect to hire people that haven't had sex outside of marriage. We expect to hire people that are – well, you know, people. But . . . we do expect to hire people that have the same beliefs." *Id*. 122-123; *see also id*. 91-93.

Evergreen's president further admitted that Evergreen has never terminated or taken an adverse employment action against an employee because the employee had an abortion or used birth control. *Id*. 42, 60-61, 81-82. In fact, Evergreen has no concerns that its employees will engage in such conduct and does not inquire about such conduct once an employee has been hired absent a specific reason to do so. *Id*. 83-84, 96-97. Evergreen is satisfied with its current staff and is not anticipating any hiring. *Id*. 65-66, 98-99.

## PROCEDURAL HISTORY

Less than three months after § 203-e became law, Plaintiff Slattery and Evergreen sued New York's Governor, Department of Labor Commissioner and Attorney General in their official capacities seeking declaratory and injunctive relief alleging that § 203-e violated their constitutional rights to free exercise of religion, free speech and freedom of expressive association. Compl., generally. Following a motion to dismiss by Defendants pursuant to Fed. R. Civ. P.

12(b)(6), Motion to Dismiss, ECF No. 22, the Court dismissed the Complaint in its entirety.

Decision & Order, ECF No. 33. Plaintiffs filed a Notice of Appeal. Notice of Appeal, ECF No. 35.

On appeal, the Second Circuit upheld the dismissal of Plaintiffs' free exercise and free

speech claims. *Slattery v. Hochul*, 61 F. 4th at 292, 293. As to the expressive association claim, the

Court held, under the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6),

that Plaintiffs plausibly alleged that compliance with the statute would pose a substantial burden

on their associational rights. *Id*. at 291. The court further held that "at this stage of the litigation"

the State failed to demonstrate that § 203-e was the least restrictive means to further a compelling

state interest. *Id.* At the same time, the court cautioned that the ultimate question of the validity of

a law challenged on First Amendment grounds is more appropriately left to summary judgment.

*Id.* at 289.

The Court accordingly remanded for discovery. Because the record shows that Evergreen

is not burdened by compliance with § 203-e, the Court should dismiss their remaining claim on

both standing and the merits.

## STANDARD OF REVIEW

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

*See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *Roe v. City of Waterbury*, 542

F. 3d 31, 35 (2d Cir. 2008). To defeat a motion for summary judgment, a non-movant must raise

issues of material fact "based on specific facts" as demonstrated by affidavits based on personal

knowledge, or other admissible evidence. *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y.

2011). "The bald assertion of some alleged factual dispute will not defeat a properly supported

motion." *Id. See also Kerzer v. Kingly Mfg.*, 156 F. 3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact.").

Based on the admissible evidence before the Court, Defendants are entitled to summary judgment on the sole remaining claim in this case.

## ARGUMENT

### POINT I: <u>PLAINTIFF'S CLAIM IS NOT JUSTICIABLE</u>

Whether framed as a lack of standing or ripeness, Evergreen's expressive association claim is not justiciable because the record shows that Evergreen does not intend to take any action that would violate Labor Law § 203-e, and because there is no imminent threat of enforcement against Evergreen. A cause of action should be dismissed for lack of subject matter jurisdiction if the court does not have "the statutory or constitutional power to adjudicate" the case. *Aron v. Becker*, 48 F. Supp. 3d 347, 361 (N.D.N.Y. 2014). This inquiry requires a showing that (1) the plaintiff "suffered an injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) "a causal connection between the injury and the conduct complained of;" and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F. 3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Although an alleged future injury may confer standing, "conjecture about speculative or possible harm is inadequate." *Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist., Wisconsin*, No. 23–1534, 2024 WL 981436, at *3 (7th Cir. Mar. 7, 2024) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Moreover, "[t]o be justiciable, a cause of action must be ripe—it must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc.*, 714 F.

3d at 687 (quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F. 3d 867, 872 (2d Cir. 1993)). If a claim "depends upon 'contingent future events that may not occur at all,'" it is not ripe. *Id.* (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). The ripeness doctrine "implicates two distinct conceptual jurisdictional criteria:" (1) the "Case or Controversy Clause of Article III of the Constitution" ("constitutional ripeness") and (2) "prudential reasons for refusing to exercise jurisdiction," making it "*better* decided later" even though a claim is ripe under Article III ("prudential ripeness"). *Id.* at 687-688. "Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing": A claim is not constitutionally ripe if a "plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). *See also New York Civil Liberties Union v. Grandeau*, 528 F. 3d 122, 130 n.8 (2d Cir. 2008) ("Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical.").

Section 203-e has never been enforced against Evergreen. Commissioner Reardon's Response to Plaintiffs' First Set of Interrogatories ("Def. Reardon's Resp. to Pl.'s Interrog.") No. 7; Attorney General James's Response to Plaintiff's First Set of Interrogatories ("Def. James's Resp. to Pl.'s Interrog.") No. 7; Governor Hochul's Response to Plaintiffs' First Set of Interrogatories ("Def. Hochul's Resp. to Pl.'s Interrog.") No. 7.[9] Therefore, its expressive association claim is a pre-enforcement claim, which is subject to "somewhat relaxed standing and ripeness rules." *Nat'l Org. for Marriage, Inc.*, 714 F. 3d at 689. But there remains a bar to be

---

[9] Commissioner Reardon's Response to Plaintiffs' First Set of Interrogatories, Attorney General James's Response to Plaintiff's First Set of Interrogatories and Governor Hochul's Response to Plaintiffs' First Set of Interrogatories are annexed to the Declaration of Adrienne J. Kerwin at Exhibits D, E and C, respectively.

cleared. *Id*. Specifically, for such a claim to proceed, a "plaintiff [must] allege[] (1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute,' and (2) 'a credible threat of prosecution thereunder.'" *Silva v. Farrish*, 47 F. 4th 78, 86 (2d Cir. 2022) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). Evergreen cannot satisfy this standard.

### A.  Evergreen Cannot Demonstrate that it Intends to Engage in a Course of Conduct Proscribed by Labor Law § 203-e

The record does not provide any evidence showing Evergreen intends to violate Labor Law § 203-e—and in fact indicates the contrary. Evergreen's fundamental concern is assuring that its employees' views and advocacy remain aligned with its pro-life mission. Harden Dep. 50, 94-95, 123. Regardless of Evergreen's conclusory claim that § 203-e implicates its constitutional right to expressive association by hindering its ability to do so, Compl. ¶¶ 87-98; Harden Dep. 76-77, the facts do not bear out this allegation. In fact, the record conclusively shows that the statute in no way impairs Evergreen's ability to ensure that its employees share its viewpoint.

Section 203-e only prohibits employers from taking adverse employment action against an employee on the basis of a reproductive health decision, *i.e.* on the basis of private medical *conduct*. Evergreen freely admits that it does not discriminate against employees on that basis. Harden Dep. 92, 122-123. Evergreen regularly hires employees who have had abortions, *id.* 92, 122, has likely hired individuals who have taken birth control, *id.* 92, and has never taken any adverse employment action against an existing employee on the basis of a reproductive health decision made by that employee or a dependent thereof. Plaintiff's Response to Defendants' First Set of Interrogatories[10] ("Pl.'s Resp. to Def.'s Interrog.") No. 1; Harden Dep. 42, 60-61, 80-81.

---

[10] Plaintiff's Response to Defendants' First Set of Interrogatories is annexed to the Declaration of Adrienne J. Kerwin at Exhibit B.

Evergreen does, however, thoroughly vet prospective employees during the hiring process to assure that they are committed to Evergreen's pro-life mission, Harden Dep. 83-84, and has historically refused to hire individuals on the basis of their "positions on abstinence, abortion or contraceptives," Pl.'s Resp. to Def.'s Interrog. No. 2, regardless of their prior conduct. Harden Dep. 92, 122. Thus, once a given employee is hired, Evergreen is broadly assured of their beliefs, *id.* 83-84, and does not inquire about their receipt of any reproductive health treatments or procedures in the absence of any compelling reason to do so. *Id.* 96-97. Nor does Evergreen inquire as to the reproductive health decisions of its existing employees' dependents. Pl.'s Resp. to Def.'s Interrog. Nos. 6, 8. Moreover, Evergreen is satisfied that the beliefs of its current staff are fully aligned with its mission and has no plans to make either inquiries as to the staff's conduct or to make any staffing changes in the foreseeable future. *Id.* 65-66, 98.

In sum, Evergreen does not intend to engage in conduct prohibited by § 203-e. Evergreen seeks to assure ideological alignment with and among its staff, and it is free to do so in full compliance with the law. Evergreen's Fed. R. Civ. P. 30(b)(6) deposition is a testament to this fact. Because Evergreen cannot establish that it presently has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," *Silva*, 47 F. 4th at 86, its claim is not justiciable.

### B. Evergreen Cannot Establish a Credible Threat of Prosecution Under § 203-e

For the same reasons, Evergreen has failed to establish any credible threat of prosecution. To establish a credible threat of prosecution, a plaintiff must demonstrate "an actual and well-founded fear that the law will be enforced against" it, *Am. Booksellers Found. v. Dean*, 342 F. 3d 96, 101 (2d Cir. 2003) (quoting *Vt. Right to Life Comm. v. Sorrell*, 221 F. 3d 376, 382 (2d Cir. 2000)), or, phrased differently, a "genuine threat of enforcement." *Steffel v. Thompson*, 415 U.S.

452, 475 (1974). Fear that is merely "imaginary or wholly speculative" does not suffice. *Hedges v. Obama*, 724 F. 3d 170, 196 (2d Cir. 2013) (quoting *Babbit v. United Farm Workers National Union*, 442 U.S. 289, 302 (1979)). Here, the aforementioned overlap between standing and ripeness is perhaps most clear: "[a] claim is not ripe if it depends upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Nat'l Org. For Marriage*, 714 F. 3d at 687 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)).

As outlined in Point I.A, *supra*, there is no credible threat that section 203-e will be enforced against Evergreen because Evergreen has admitted it does not intend to engage in conduct that runs afoul of the Statute. Evergreen hires employees who have received abortions, Harden Dep. 92, and the law does not require it to employ ideological dissidents. *See Slattery v. Hochul*, 61 F. 4th 294-95; *CompassCare v. Cuomo*, 465 F. Supp. 3d 122, 148 (N.D.N.Y. 2020). Evergreen's practice of refusing to hire prospective employees on the basis of their "positions" on reproductive health matters remains perfectly lawful. Pl.'s Resp. to Def.'s Int. No. 2, *see* N.Y. Labor Law § 203-e. Moreover, § 203-e has yet to be enforced against any employer at all. Def. Reardon's Resp. to Pl.'s Interrog. No. 7; Def. James's Resp. to Pl.'s Interrog. No. 7; Def. Hochul's Resp. to Pl.'s Interrog. No. 7. In other words, Evergreen's fear is not credible, but rests on a series of assumptions so remote as to be wholly speculative.

Because Evergreen admits it does not solicit information on the reproductive health decisions made by its employees' dependents, Pl.'s Resp. to Def.'s Interrog. Nos. 6, 8, liability would presumably arise in the context of an extant employee making a reproductive health decision contrary to Evergreen's mission, Evergreen taking adverse action against that employee, and that employee filing a complaint with the Department of Labor. But Evergreen concedes it is not concerned that such an event will occur given that its hiring process thoroughly vets

11

prospective employees' beliefs and viewpoints. Harden Dep. 84. Accordingly, Evergreen does not actively monitor its employees' reproductive health decisions, relying instead on voluntary disclosure, or, in its words, on an "honor system." *Id.* 83; Pl.'s Resp. to Def.'s Interrog. No. 5. Evergreen avers that it "is especially likely" to learn of an employee's reproductive health decision by voluntary disclosure "given the centrality of abortion to [its] mission," Pl.'s Resp. to Def.'s Interrog. No. 5, but there is no evidence in the record to support such a speculative statement. In fact, it is just as, if not more, *unlikely* that an Evergreen employee would voluntarily admit to Evergreen that she or he made a reproductive health decision contrary to her or his, and Evergreen's, beliefs.

In sum, Evergreen's speculative theory of future liability first assumes that an employee who has already demonstrated a steadfast commitment to Evergreen's pro-life mission through the application vetting process will betray those beliefs by way of a reproductive health decision. It next assumes that the employee will voluntarily share the fact of that betrayal with Evergreen, or perhaps with the public. It finally assumes that the employee will remain committed to Evergreen's mission both ideologically and in their workplace conduct in the meantime, because, as discussed above, Evergreen is well within its rights to terminate an employee on the basis of the employees' beliefs that run counter to its mission, or for a failure to fulfill job responsibilities. Liability would only arise if, given all these assumptions, Evergreen acted against the hypothetical employee solely on the basis of their reproductive health decision. *See* N.Y. Labor Law § 203-e. In sum, the hypothetical scenario upon which Plaintiff's case relies serves only to betray its inability to articulate any actual conflict between § 203-e—or its current personnel practices—and its alleged expressive associational rights.

For the foregoing reasons, Evergreen cannot demonstrate based on the factual record that it faces a credible threat of prosecution under § 203-e.  Thus, this Court should dismiss Plaintiff's remaining claim for lack of justiciability.

POINT II: <u>PLAINTIFF CANNOT ESTABLISH A VIOLATION OF ITS FIRST AMENDMENT RIGHT TO EXPRESSIVE ASSOCIATION</u>

Even if, *arguendo*, the Court finds that Plaintiff's claim is justiciable, Defendants are still entitled to summary judgment on the merits of Plaintiffs' expressive association claim. The First Amendment protects the "'right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'" *Boy Scouts of America v. Dale*, 530 U.S. 640, 647 (2000) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). However, the freedom of association "is not absolute." *Id*. at 648. In the first instance, employers cannot assert expressive associational rights, as discussed in Point II.A, *infra*. Regardless, incidental burdens on associational interests do not violate the First Amendment in any event. *Tabbaa v. Chertoff*, 509 F. 3d 89, 101 (2d Cir. 2007). Indeed, unless the burden on expressive association rights is "severe," a statute need only be supported by a rational basis. *Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts*, 852 F. 3d 178, 191 (2d Cir. 2017).

Applying these principles here, Plaintiff cannot establish an expressive association claim.

**A. The Freedom of Expressive Association Does Not Apply to the Employer-Employee Relationship**

Although the Second Circuit concluded that Evergreen plausibly alleged that § 203-e's core provisions violated its associational rights for purposes of a Fed. R. Civ. P. 12(b) motion, *see Slattery v. Hochul*, 61 F. 4th at 283, the evidentiary record now before this Court establishes that

the right of expressive association does not extend to employment relationships such as those between Evergreen and its six employees. Pl.'s Resp. to Def.'s Interrog. No. 4.

Neither the Supreme Court nor any Circuit has extended the right of expressive association to an employer. Rather, the Supreme Court rejected such a claim outright on the sole occasion it had to do so. *See Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984). Although the Court in *Hishon* did not explain its rationale for rejecting the argument that Title VII—an employment discrimination statute like § 203-e—infringed on the right to expressive association, it later described its decision as "reject[ing] the argument that Title VII infringed employers' First Amendment rights." *See Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993); *see also New York State Club Assn. v. City of New York*, 487 U.S. 1, 13 (1988) (citing *Hishon* for the proposition that the right not to associate does not extend to "every setting in which individuals exercise some discrimination in choosing associates"). The Court's reasoning sensibly rests on the fact that, unlike voluntary associations, the associational relationship between an employer and its employees is a commercial one. *See Roberts*, 468 U.S. at 634 (O'Connor, J., concurring) (explaining "there is only minimal constitutional protection of the freedom of *commercial* association"); *cf. Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 553-54 (2001) ("[T]he Court has afforded commercial speech a measure of First Amendment protection 'commensurate' with its position in relation to other constitutionally guaranteed expression.").

Saliently, the four other expressive association cases decided by the Supreme Court all involved membership associations or other voluntary relationships, and even then, the Court rejected the claim in three. *Roberts*, 468 U.S. at 612 (challenge to public accommodation law as applied to policy of Jaycees excluding women as full voting members); *New York State Club Assn.*, 487 U.S. at 4 (facial challenge to local law prohibiting discrimination by certain private clubs);

14

*Board of Directors of Rotary Int'l. v. Rotary Club of Duarte*, 481 U.S. 537, 539 (1987) (challenge to public accommodation law as applied to policy of Rotary International excluding women from club membership).

The Court upheld an expressive association claim only in *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), which is far from dispositive here. There, an "avowed homosexual and gay rights activist" challenged the loss of his voluntary "adult membership" status in the Boy Scouts of America under a state public accommodations law. *Id.* at 644. Here, an employer mounts a pre-enforcement challenge to a state labor law protecting employees from discrimination or retaliation on the basis of their private medical decisions. Setting aside the glaring differences between both the statutes[11] (a public accommodation statute and a section of the labor law) and the conduct (public activism and private medical decisions) at issue in these cases, the simple fact that *Dale* concerned an individual who was volunteering their time renders its expressive association analysis inapposite in the instant context. Section 203-e, like countless other valid laws, *see, e.g.* N.Y. Labor Law § 652 (minimum amount of pay); N.Y. Labor Law § 191 (frequency of payment); 29 C.F.R. pt. 19010 (required workplace safety measures); N.Y. Labor Law Art. 7, generally (various provisions related to protecting employee health and safety), applies only to Plaintiff's relationships with its paid employees. *See Slattery v. Hochul*, 62 F. 4th at 295 n.12.

Moreover, while only a handful of district courts appear to have addressed the question of whether employment discrimination laws implicate the right of expressive association, most accord with *Hishon*.[12] *See Starkey v. Roman Catholic Archdiocese of Indianapolis*, 496 F. Supp

---

[11] The public accommodation statute in *Dale* prohibited, among other things, discrimination in places of public accommodation based on an individual's sexual orientation. *Dale*, 530 U.S. at 645 (citing N.J. Stat. Ann. 10:5-4, 10:5-5).

[12] In *Bear Creek Bible Church v. EEOC*, the district court for the Northern District of Texas erroneously extended the right of expressive association to an employer in a class-action suit

3d 1195, 1209 (S.D. Ind. 2020); *Fitzgerald v. Roncalli High Sch.*, No. 1:19-cv-04291, 2021 U.S. Dist. LEXIS 206826, at *7 (S.D. Ind. March 31, 2021); *Richardson v. Northwest Christian Univ.*, 242 F. Supp. 3d 1132, 1153 (D. Or. 2017); *Billard v. Charlotte Catholic High Sch.*, No. 3:17-cv-00011, 2021 U.S. Dist. LEXIS 167418, at *73-74 (W.D.N.C. Sept. 3, 2021), *appeal filed*, No. 3:17-cv-00011, ECF No. 73 (April 18, 2022), *appeal stayed by* No. 22-1440, 2023 U.S. App. LEXIS 9679 (4th Cir. Apr. 21, 2023); *McMahon v. World Vision, Inc.*, No. C21-0920JLR, 2023 U.S. Dist. LEXIS 211417, at *55-56 (W.D. Wash. Nov. 28, 2023). *McMahon*, the most recent of these decisions, expressly addressed and distinguished the Second Circuit's holding in *Slattery*, noting its "fail[ure] to address the Supreme Court's holding in *Hishon*." 2023 U.S. Dist. LEXIS 211417, at *55 (citing *Slattery v. Hochul*, 61 F. 4th at 291).

Both *Hishon* and the broad consensus among other districts on this issue reflect an elemental truth: the commercial relationship of employment does not enjoy the same constitutional protections as a voluntary relationship with an expressive association. As the Supreme Court long ago explained: "In dealing with the relation of employer and employed, the Legislature has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression." *West Coast Hotel Co. v Parrish*,

---

where the right was asserted by a for-profit, religiously identified employer that was engaged in secular work (the production of secular products related to health and wellness), as opposed to any expressive activity. 571 F. Supp 3d 571, 616 (N.D. Tex. 2021). On appeal, the Fifth Circuit reversed the grant of class certification and affirmed in part on other grounds, without reaching the expressive association claim. *See Braidwood Mgmt. v. EEOC*, No. 22-10145, 2023 U.S. App. LEXIS 15378, *36, 37, 45 & n.60 (5th Cir. June 20, 2023). The district court for the Eastern District of Missouri's decision in *Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805, 821 (E.D. Mo. 2018) (recognizing an employer's right of expressive association and applying *Dale*), is distinguishable from the instant case because the statute there at issue, unlike § 203-e, required employment of individuals who did not share the employer's beliefs and, in any event, the court failed to account for *Hishon*. *See* 349 F. Supp. 3d at 821.

300 U.S. 379, 393 (1937). Accordingly, both Congress and state legislatures have extensively regulated myriad aspects of the employment relationship. For example, laws regulate the minimum amount an employee must be paid, N.Y. Labor Law § 652, how frequently certain employees may be paid, N.Y. Labor Law § 191, and what safety measures must be put into place to protect employees. 29 C.F.R. pt. 19010.

More specifically, when the Supreme Court first recognized freedom of association as a constitutional right, it spoke in terms of the "close nexus between the freedoms of speech and assembly," declaring that the "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment." *NAACP v. Alabama* ex rel. *Patterson*, 357 U.S. 449, 460 (1958) (internal citations omitted). The concern that later prompted the Court to recognize the corollary right "not to associate" was government intrusion into a voluntary association's "internal structure or affairs," which was thought to "impair the ability of the original members to express only those views that brought them together." *Roberts*, 468 U.S. at 623. In the employment or commercial context, however, safeguards allowing a given employer to effectively convey its chosen message already exist. Employers possess broad discretion in staffing decisions, *see, e.g., Nix v. WLCY Radio/Rahall Commc'ns*, 738 F. 2d 1181, 1187 (11th Cir. 1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."), and are accordingly free to refuse to hire a given person or to fire a given employee for failure to espouse beliefs intrinsic to their role. As the Second Circuit recognized, that freedom is not hampered by § 203-e. *Slattery v. Hochul*, 61 F. 4th at 295 (noting that employers like Evergreen can lawfully terminate or take adverse actions against an employee whose performance does not satisfy expectations).

Finally, the Second Circuit's passing comment that "compelled hiring" may affect an organization's "ability to advocate public or private viewpoints," *Slattery*, 61 F. 4th at 288 (citing *New Hope Family Servs. v. Poole*, 966 F. 3d 145, 179 (2d Cir. 2020)), has no bearing on the issue of expressive association in the employment context. *New Hope* involved a regulation that implicated the relationship between a religiously affiliated adoption services agency and its prospective adoption *applicants*, not the relationship between an employer and employee. 966 F. 3d at 149. *New Hope* did not involve an employment relationship at all.

For these reasons, while the Second Circuit sustained Plaintiffs' expressive association claim at the pleading stage on the assumption that the burden on Evergreen's ability to convey its message was significant, the Court need not—and should not—extend the right to expressive association to the employment context at this stage in the litigation in the face of a record to the contrary.[13]

**B.  Even if, *Arguendo*, the Freedom of Association Applies to the Employer-Employee Relationship, Plaintiff Cannot Establish a Violation of that Right**

Even if this Court extends the right of expressive association to the employment context, § 203-e's application to Plaintiff would be subject only to rational basis review because the record does not bear out the existence of anything other than an incidental burden—if any burden at all—

---

[13] Doing so could allow a whole swath of employers to evade the important protections afforded by a broad range of employment discrimination laws. An employer who sincerely believes in white supremacy could assert a "right not to associate" with Black employees. The same would be true of other entities seeking to spread messages intolerant of other protected characteristics, including religion, ethnicity, national origin, and sex, allowing certain employers to exclude historically disfavored groups from employment opportunities. To be sure, persons with protected characteristics may not wish to work for entities intolerant of those characteristics, but allowing an employer to deny an employment opportunity to a person on account of that person's protected characteristics would significantly undermine a host of antidiscrimination laws and fly in the face of well-established principles of equal treatment. *See e.g. CompassCare, et al. v. Hochul*, et al., 22-951(L), Brief of Amici Curiae 20, ECF No. 85 (2d Cir. July 13, 2023).

on Evergreen's expressive associational rights. Defendants are therefore entitled to summary judgment.

1. <u>Section 203-e Does Not Significantly Burden Evergreen's Ability to Advocate its Viewpoints</u>[14]

In overturning this Court's dismissal of Plaintiffs' expressive association claim, the Second Circuit accepted as true the allegation that compliance with the statute would compromise the ability of Plaintiffs' organization "to sincerely and effectively convey a message of disapproval of certain types of conduct if, at the same time, it must accept members who engage in that conduct." *Slattery v. Hochul*, 61 F. 4th at 290. Indeed, the Second Circuit's assumption at the pleading stage that § 203-e imposed a significant burden on Evergreen's association rights was based on Evergreen's allegations that it asks employees about "conduct" that might be contrary to its anti-abortion views. *Id.* at 288-89. But the record demonstrates that, in practice, if § 203-e burdens Evergreen's expressive association rights at all, such burden is merely incidental, and therefore does not give rise to strict scrutiny. To be entitled to that First Amendment protection, Plaintiff must prove that the statute's "interference with [its] associational rights is 'direct and substantial or significant.'" *Tabbaa v. Chertoff*, 509 F. 3d 89, 101 (2d Cir. 2007) (quoting *Fighting Finest v. Bratton*, 95 F. 3d 224, 228 (2d Cir. 1996)). Plaintiff cannot do so on this record. Therefore, any burden on those rights is incidental at best.

The requirements of § 203-e are facially detached from the viewpoint that lies at the core of Plaintiff's claims. Section 203-e speaks only to conduct, *i.e.*, the private medical decision to receive an abortion or contraceptive itself. As mentioned previously, the record reflects that

---

[14] While Defendants do not concede that Evergreen is an expressive association for purposes of First Amendment analysis, it is unnecessary to reach this issue since Evergreen cannot establish the other required elements.

Plaintiff regularly hires women who have had abortions, § 203-e notwithstanding. Harden Dep. 92. And once a hiring decision is made, it does not inquire as to the conduct of its existing employees. *Id*. 96. In other words, Plaintiff already recognizes that the private medical *conduct* of its employees—standing alone, as it does in the context of § 203-e—poses no threat to its alleged expressive activity or ability to achieve its mission. If, on the other hand, an employee's beliefs about abortion were to threaten or otherwise undercut Plaintiff's desired message, Plaintiff remains free to fire them.

Because the record establishes that any burden § 203-e imposes on Plaintiff's expressive associational rights is incidental at most, the statute need only pass rational basis review, which it plainly does. Section 203-e was enacted to "prohibit employers from discriminating against employees based on the employees' or dependents' reproductive health decisions," protect New Yorkers' rights to privacy and autonomy in their health care and family planning decisions and records and information related thereto in the employment context, and prevent workplace discrimination. N.Y.S. Assembly Memorandum, ECF No. 22-2; N.Y.S. Senate Introducer's Memorandum, ECF No. 22-3. This court has already held that such interests are legitimate. *Slattery v. Cuomo*, 531 F. Supp. 3d at 561. The statute effectuates that goal by prohibiting precisely that conduct. Therefore, the statute is rationally related to the state's valid interest in protecting employees from discrimination based on their private, legal choices. *See New Hope Family Servs. v. Poole*, 387 F. Supp. 3d 194, 219-220 (N.D.N.Y. 2019) (State's interest in prohibiting discrimination "far exceeds" any harm to plaintiff's expressive association).

While Evergreen alleges that the statute forces it to hire and retain employees it does not want, its expressive associational rights are only infringed if "the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints." *Dale*, 530 U.S.

at 647. Unlike the statute at issue in *Dale*, § 203-e does not require Evergreen to employ, let alone otherwise affiliate with, individuals who engage in public activism that undercuts the message Plaintiff expects its staff to convey. *See* 530 U.S. at 649-650. Nor does it force Evergreen to retain any employee who expresses any beliefs to patients contrary to its mission. Thus, it cannot be said that § 203-e's prohibition on firing employees on the basis of their (or their dependents') private reproductive health care decisions significantly burdens Plaintiff's ability to convey its desired message—because Plaintiffs' own admissions establish that compliance with the statute would not require Evergreen to alter its current practices in any way. As § 203-e does not require Evergreen to employ dissenters from its message, it does not severely burden Evergreen's expressive associational rights.

Moreover, to the extent that Evergreen argues that § 203-e imposes a burden on its rights by virtue of the risk that the public might perceive it as hypocritical for complying, *i.e.*, retaining an employee who has received reproductive healthcare contrary to its mission, *Slattery v. Cuomo*, 531 F. Supp. 3d at 569, such a claim is "not based on anything an organization must say or is forbidden from saying; [it is] based on speculation about what other people might think." Hans Allhoff, *Membership and Messages: The Il(logic) of Expressive Association Doctrine*, 15 U. Pa. J. Const. L. 1455, 1456 (2013). This theory of infringement necessarily assumes that: (1) a given employee's reproductive health decision will become known to the public, such that it enters the realm of public advocacy in which Plaintiff's expressive associational rights allegedly exist; (2) the public knows the decisionmaker is an Evergreen employee; and (3) the public will impute that decision to Evergreen, thereby hampering its message. It is hard to imagine how a possibility this

attenuated and remote could amount to any burden on Plaintiff's expressive associational rights, let alone a severe one.[15]

In any event, here the evidentiary record establishes that such a hypothetical burden on Evergreen is, in practice, wholly absent. Evergreen admitted that it regularly hires and continues to employ individuals who have received abortions, Harden Dep. 92, suggesting it is either (1) willing to, and does, take the aforementioned alleged risk, or (2) knows that such information is likely to remain private, or both. And as previously established, Evergreen does not typically inquire about reproductive health decisions of current employees or their dependents and has no plans to do so. *Id.* 77, 96.  Because on this record, Evergreen can prove at most "[m]ere incidental burdens on the right to associate," section 203-e need only survive rational basis review, which it readily does. *Tabbaa*, 509 F. 3d at 101.

2. Even if Strict Scrutiny Applies, Plaintiff Cannot Establish a First Amendment Violation

Even if, *arguendo*, the Court finds that Plaintiff has put forth facts establishing such a burden exists and that strict scrutiny applies, the statute is sufficiently narrowly tailored to advance a compelling state interest and therefore survives such review.

The Second Circuit applies strict scrutiny only when a statute imposes "'severe burdens' on associational rights," and a statute will survive strict scrutiny "only if it is narrowly drawn to advance a compelling state interest." *Jacoby & Meyers, LLP*, 852 F. 3d at 191 (quoting *Kraham v. Lippman,* 478 F. 3d 502, 506 (2d Cir. 2007)). To satisfy strict scrutiny, § 203-e must be "unrelated to the suppression of ideas" and must be tailored to serve a compelling interest in the

---

[15] The Second Circuit's discussion of Evergreen's speculation that the public might perceive Evergreen as hypocritical based on retaining such an employee was, again, based on the Court's view that § 203-e impedes Evergreen's right "to choose those who promote its views" based on information about their conduct. *Slattery v. Hochul*, 61 F. 4th at 290.

manner least restrictive of expressive associational freedoms. *Roberts*, 468 U.S. at 623; *accord Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F. 3d 985, 997 (2d Cir. 1997). Section 203-e satisfies even this demanding test.

First, the statute serves several interests that the New York legislature stated are "fundamental." In enacting the Reproductive Health Act, the state established that "comprehensive reproductive health care, including contraception and abortion, is a fundamental component of a woman's health, privacy and equality."[16] 2019 Laws of N.Y., c. 1, § 1; N.Y. Pub. Health Law § 2599-bb. *See also Hope v. Perales*, 83 N.Y.2d 563, 575, 634 N.E.2d 183, 186 (1994) (assuming without deciding that a right to abortion under the New York State Constitution was at least as expansive as the right then recognized as encompassed in the federal Constitution). The legislature further found that as a matter of state public policy, "every individual possesses a fundamental right of privacy and equality with respect to their personal reproductive decisions and should be able to safely effectuate those decisions, including by seeking and obtaining abortion care, free from discrimination in the provision of health care." 2019 Laws of N.Y., c. 1, § 1. New York's statute was enacted to safeguard those rights in the context of the employment relationship, and in furtherance of its compelling interest in preventing "discrimination and 'discriminatory

---

[16] The Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), does not undermine the conclusion that the Statute advances a compelling state interest. In extinguishing the federal Constitutional right to abortion, the Supreme Court emphasized that under its ruling, states were free to balance the interests in potential life with the interest in protecting access to abortion differently, and to legislate accordingly. *See id.* at 232. (explaining that the Court was returning "the issue of abortion to the people's elected representatives"). Moreover, even as a matter of federal constitutional law, the Court was careful to emphasize that its decision was limited to the context of abortion, which uniquely implicated those competing interests. *See id.* at 290 ("Nothing in this opinion should be understood to cast doubt on precedents that do not concern abortion."). Other precedent recognizing constitutional rights, including the long-recognized constitutional right to privacy advanced by the Statute, therefore remain undisturbed. *See, e.g., Griswold v. Connecticut*, 381 U.S. 479, 485 (1965).

interference with constitutional rights,'" *CompassCare*, 465 F. Supp. at 158 (quoting *Jews for Jesus, Inc. v. Jewish Community Relations Council, Inc.*, 968 F.2d 286, 295 (2d Cir. 1992)), including the right to privacy. As § 203-e's Assembly sponsor stated: "[n]o employee in the State of New York should ever be discriminated or retaliated against by their employer" for "personal and private decisions regarding their reproductive health." N.Y. Assembly Debate on Assembly Bill No. A00584, Jan. 22, 2019 at 132. The statute directly advances this compelling interest by prohibiting employers from taking adverse employment actions based on such private reproductive health care decisions.

Moreover, the law advances that interest in the manner least restrictive of expressive associational rights because it focuses on preventing discrimination based on employees' private conduct, rather than based on their personal views or the public expression of their beliefs. As the Second Circuit has explained, the determination of whether a statute is sufficiently narrowly tailored in expressive association cases requires a balancing of the parties' respective interests in: (1) "the individual's right not to be discriminated against for certain reproductive choices, such as having an abortion;" and (2) "the First Amendment right of a particular association—in this case, Evergreen—to advocate against that conduct." *Slattery v. Hochul*, 61 F. 4th at 289. In this case, the balancing performed by the Court at the pleading stage —based solely on the allegations in the Complaint—yielded a finding that the Plaintiff had stated a plausible claim that imposing a limitation on where a person can work, *id.* (if Evergreen could "exclude employees who have had an abortion, the right to be free of discrimination for having an abortion will be impaired only to the limited extent that a person cannot join the specific group or groups that oppose abortion") was outweighed by an association's right to express its viewpoint. *Id.* at 289-290. The Court reasoned that "if the state could require an association that expressly opposes abortion to accept members

24

who engage in the conduct the organization opposes, it would severely burden the organization's right of expressive association" because it "'would be difficult' . . . for an organization 'to sincerely and effectively convey a message of disapproval of certain types of conduct if, at the same time, it must accept members who engage in that conduct.'" *Id*. at 290 (quoting *Christian Legal Soc'y v. Walker*, 453 F. 3d 853, 863 (7th Cir. 2006)).

This hypothesis has been disproven by what the record establishes about Evergreen's own conduct, and specifically, the impact on its ability to express its message. Evergreen willingly accepts employees who have had abortions, Harden Dep. 92, 122-123, recognizing that such employees are able to "sincerely and effectively" convey Evergreen's disapproval of abortion notwithstanding their personal health decisions. *Id*. 121-122. Evergreen has never had a concern that an employee was not committed to its pro-life message, *id*. 77, 123, and it never had an employee refer a patient to an organization that performs abortions. *Id*. 61. This evidence illustrates the precision of § 203-e: it accomplishes New York's goal of protecting an employee's right to make private medical decisions while simultaneously protecting Evergreen's ability to express its viewpoint. The statute does not mandate the retention of employees who betray their employer's views, whether publicly or in the context of performing their duties; it only protects employees from discrimination on the basis of a private decision to obtain legal medical care. As the record establishes, Plaintiff is not required to employ or associate with dissidents from its pro-life message. Rather, § 203-e, like the regulation at issue in *Roberts*, "imposes no restrictions on [Evergreen's] ability to exclude individuals with ideologies or philosophies different from those of its existing members." *Id.* at 627.

Since § 203-e appropriately balances these interests, without unnecessarily impinging on Plaintiff's advocacy of its viewpoint, it survives strict scrutiny and does not unconstitutionally

burden Plaintiff's right to expressive association. Therefore, Plaintiff's freedom of association claim should be dismissed as a matter of law.[17]

## CONCLUSION

For all of the reasons discussed above, Defendants' Motion for Summary Judgment should be granted in its entirety.

Dated: Albany, New York
       April 26, 2024

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
Kathy Hochul, Roberta Reardon, and Letitia
James in their Official Capacities
The Capitol
Albany, New York  12224

By: *s/ Adrienne J. Kerwin*
Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 105154
Telephone: (518) 776-2608
Fax: (518) 915-7738 (Not for service of papers)
Email: Adrienne.Kerwin@ag.ny.gov

Noah D. Coates
Attorney General Legal Intern, on the Brief

TO:    All Counsel of Record (via ECF)

---

[17] In the alternative, if this Court finds that the statute's effect is too broad in some respect (and it should not), § 203-e's severability clause directs that the statute should be saved in all other respects. *See* N.Y. Labor Law § 203-e(7). Additionally, any declaratory or injunctive relief should be limited to Evergreen only.