**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

THE EVERGREEN ASSOCIATION, INC., a New
York nonprofit corporation, doing business as
Expectant Mother Care and EMC FrontLine
Pregnancy Centers,

                    Plaintiff,

    v.

KATHY HOCHUL, in her official capacity as the
Governor of the State of New York; ROBERTA
REARDON, in her official capacity as the
Commissioner of the Labor Department of the State
of New York; and LETITIA JAMES, in her official
capacity as the Attorney General of the State of New
York,

                    Defendants.

_____

1:20-cv-0112 (AMN/DJS)

**APPEARANCES:**

**CHRISTOPHER A. FERRARA**
148-29 Cross Island Parkway
Whitestone, New York 11357
_Attorney for Plaintiff_

**CLAYTON PLAZA LAW GROUP**
112 S. Hanley Road – Suite 200
Saint Louis, Missouri 63105
_Attorney for Plaintiff_

**OFFICE OF THE ATTORNEY**
**GENERAL – ALBANY**
The Capitol
Albany, New York 12224
_Attorneys for Defendants_

**OF COUNSEL:**

**CHRISTOPHER A. FERRARA,**
**ESQ.**

**J. MATTHEW BELZ, ESQ.**
**TIMOTHY BELZ, ESQ.**

**ADRIENNE J. KERWIN, ESQ.**

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

On January 31, 2020, The Evergreen Association, Inc., doing business as Expectant Mother Care and EMC Frontline Pregnancy Centers, ("Evergreen" or "Plaintiff") and Christopher T. Slattery commenced this action asserting claims under the First Amendment and Fourteenth Amendments and seeking declaratory and injunctive relief.  Dkt. No. 1.[1]  Plaintiff seeks a declaration that N.Y. Lab. Law § 203-e ("§ 203-e") is unconstitutional and void, as well as an injunction against enforcement of the law against Plaintiff and others not before the Court.  *Id.* at 23.  Presently before the Court is Plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Dkt. No. 53 ("Plaintiff's Motion"), Defendants' opposition, Dkt. No. 55, and Plaintiff's reply, Dkt. No. 58.  Also before this Court is Defendants' motion for summary judgment, Dkt. No. 54 ("Defendants' Motion"), Plaintiff's opposition, Dkt. No. 56, and Defendants' reply, Dkt. No. 57.[2]  For the reasons set forth below, Plaintiff's Motion is **DENIED** and Defendants' Motion is **GRANTED**.[3]

## II.     BACKGROUND[4]

### A.  Facts

In 2019, the New York State Legislature passed § 203-e.  In relevant part, § 203-e states that employers shall not "discriminate nor take any retaliatory personnel action against an employee with respect to compensation, terms, conditions, or privileges of employment because

---

[1] On November 22, 2023, Plaintiff Christopher T. Slattery died.  Dkt. No. 49.  Evergreen is now the sole Plaintiff.

[2] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

[3] This case was reassigned to the undersigned on November 13, 2024.  Dkt. No. 59.

[4] Unless otherwise indicated, the following facts have been asserted by the parties in their statements of material facts with accurate record citations, and expressly admitted or not denied with a supporting record citation in response.

of or on the basis of the employee's or dependent's reproductive health decision making, including, but not limited to, a decision to use or access a particular drug, device or medical service[.]"  § 203-e(2)(a).    The law also prohibits employers "from accessing an employee's personal information regarding the employee's or the employee's dependent's reproductive health decision making, including but not limited to, the decision to use or access a particular drug, device or medical service without the employee's prior informed affirmative written consent."  § 203-e(1). Employees may enforce § 203-e through a private right of action.  *See* § 203-e(3).  Additionally, New York's Attorney General may enforce the statute through prosecution, and the State's Department of Labor Commissioner may enforce the statute through orders "directing compliance."  *See* N.Y. Lab. Law §§ 21, 214; N.Y. Exec. Law § 63(1).

Evergreen is a nonprofit 501(c)(3) organization that has operated continuously since October of 1985.  Dkt. No. 53-3 at ¶ 7.  Reverend James Harden assumed the position of President of Evergreen following the death of its former president and plaintiff in this case, James T. Slattery. *Id.* at ¶ 4.  Evergreen operates in Brooklyn, the Bronx, and Queens.  *Id.* at ¶ 8.  According to Plaintiff, Evergreen runs "crisis pregnancy centers . . . with the morally and religiously motivated mission of saving children from abortion and supporting mothers who decide against abortion, including by providing alternatives to abortion."  *Id.* at ¶ 9.  Defendants characterize Evergreen as, essentially, a medical provider which diagnoses pregnancies and provides information regarding available community resources.  Dkt. No. 55-7 at ¶ 9.  Currently, Evergreen has six employees including two licensed practical nurses, two ultrasonographers, one material coordinator, and one scheduler/counselor.  Dkt. No. 54-8 at ¶ 8.  The parties dispute the degree to which each of these employees participates in Evergreen's goal of professing and promoting "the moral and religious belief that all human life is equally valuable and deserving of protection, from fertilization to

3

natural death." Dkt. No. 53-3 at ¶¶ 12, 20; Dkt. No. 55-7 at ¶¶ 12, 20. Plaintiff asserts its employees "provide[] counseling, education, ultrasounds and information" to pregnant women and that they are the "messengers" of Evergreen's work. *Id.* at ¶¶ 18, 20. Defendants deny that Evergreen employees provide counseling. Dkt. No. 55-7 at ¶¶ 18, 20. Instead, Defendants assert that though the ultrasonographers at Evergreen might incidentally speak to a patient about the nature of her pregnancy as it relates to abortion options, their primary function is to conduct direct imaging and diagnostic scanning and to explain those results to the patient. Dkt. No. 54-8 at ¶ 16.

As part of its work, Evergreen asserts that its employees are expected to communicate a pro-life message in public and private. Dkt. No. 53-3 at ¶ 21. Evergreen asserts that, in order to effectively convey its message, it employs only individuals who adhere to Evergreen's position regarding reproductive health decisions, including opposition to abortion and abortifacient contraception. *Id.* at ¶ 22. To ensure that it only hires individuals aligned with its mission, Evergreen asks prospective employees if they are pro-choice or pro-life, and pro-choice candidates are not considered for employment. *Id.* at ¶ 23. Evergreen also asks about an applicant's "experience" with abortion and if the individual has been involved in an abortion in order to determine if the prospective employee's "pro-life convictions extend to their behavior." *Id.* If an applicant indicates that she would have an abortion in the future, the applicant is not hired. *Id.* Evergreen also requires a "pro-life commitment" from its job applicants and employees. *Id.* During the course of this litigation, Evergreen began requiring that employees sign a document called an "EMC Staff Statement of Position, Faith & Principle." *See* Dkt. No. 53-8. The document requires, in part, that employees uphold Evergreen's position on abortion, though Evergreen admits that at the time the document was created, Evergreen had no concerns that any employees were acting contrary to Evergreen's beliefs. Dkt. No. 53-3 at ¶ 24; Dkt. No. 55-7 at ¶ 24; Dkt. No.

54-8 at ¶ 39. Evergreen asserts that it will not hire or retain individuals who refuse to act in accordance with its anti-abortion positions. *Id.* at ¶ 25.

Indeed, Evergreen asserts that, in the past, it has refused to hire job applicants because of their positions related to reproductive health decisions. *Id.* However, Evergreen admits that no Evergreen employee has ever been fired because of her own healthcare decisions, including the decision to have an abortion or use birth control. Dkt. No. 54-8 at ¶ 26. Evergreen has also hired people who have had abortions in the past and admits that it has probably hired someone who has used birth control. *Id.* at ¶¶ 32, 33. Moreover, Evergreen admits that it would hire someone who has had an abortion "under certain circumstances," including when the individual says she would not have an abortion again. *Id.* at ¶ 31; Dkt. No. 56-2 at ¶ 31. Finally, Defendants assert that the only rejected job applicants identified by Evergreen in discovery were rejected by Evergreen because of their views, or "positions," on abstinence, abortion, or contraceptives, not because of the applicants' own reproductive health decisions. Dkt. No. 55-7 at ¶ 25; Dkt. No 54-3 ¶ 2.

Plaintiff argues that § 203-e restricts its ability to effectively convey a pro-life and religious stance on abortion, contraception, and sexual morality. Dkt. No. 53-3 at ¶ 27. It is undisputed that Evergreen has not had to change anything about its operations or the services it provides because of § 203-e, and that § 203-e has not been enforced against it. Dkt. No. 54-8 at ¶¶ 47, 50. Evergreen is also satisfied with its current staff and is not currently hiring. *Id.* at ¶ 36.

### B. Procedural History

Initially, Plaintiff pressed several First and Fourteenth Amendment claims,[5] alleging that § 203-e violated Plaintiff's rights of free speech, free exercise of religion, and expressive association,

---

[5] "[T]he Fourteenth Amendment incorporates the protections of the First Amendment against state governments." *Slattery v. Hochul*, 61 F.4th 278, 287 n.1 (2d Cir. 2023).

and further asserting that § 203-e was impermissibly vague.  On April 17, 2020, Defendants filed

a motion to dismiss the suit.  Dkt. No. 22.  The Court granted the motion in its entirety and

dismissed the Complaint on March 31, 2021.  Dkt. No. 34.  Plaintiff filed a timely notice of appeal.

Dkt. No. 35.

On appeal, the Second Circuit affirmed the dismissal of Plaintiff's free speech, free

exercise, and vagueness claims.  *See Slattery*, 61 F.4th at 291-95.  However, the Second Circuit

reversed the dismissal of Plaintiff's expressive association claim, finding that under the applicable

standard at the pleadings stage, Plaintiff had plausibly alleged that compliance with the statute

would pose a significant burden on its associational rights.  *Id.* at 288 ("Evergreen has plausibly

alleged that, by foreclosing Evergreen's ability to reject employees whose actions suggest that they

believe the opposite of the message it is trying to convey, § 203-e severely burdens Evergreen's

First Amendment right to freedom of expressive association.").  The Second Circuit also found

that Defendants had failed to show that § 203-e satisfied strict scrutiny but noted that the law's

ultimate viability under strict scrutiny should be determined at the summary judgment stage.  *Id.*

at 289-91 ("We hold that at this stage of the litigation, New York has not shown that § 203-e

satisfies this standard.").  The Second Circuit remanded for further proceedings, and on April 26,

2024, the parties filed the instant motions for summary judgment.  Dkt. Nos. 53, 54.

## III.    STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light

most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).  A court first

determines "whether the evidence presents a sufficient disagreement to require submission to a

[factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Galeotti v. Cianbro Corp.*, No. 5:12-cv-00900 (MAD/TWD), 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

In seeking summary judgment, a moving party "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

## IV.    DISCUSSION

### A.  Standing

Defendants argue that Plaintiff's remaining claim is nonjusticiable due to a lack of standing. Dkt. No. 54-9 at 14-20. This Court lacks subject matter jurisdiction where a plaintiff

fails to show the following three elements of Article III standing: "(1) 'the plaintiff must have suffered an injury in fact,' i.e., 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'; (2) 'there must be a causal connection between the injury and the conduct complained of'; and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). However, the parties agree that this case presents a "pre-enforcement" First Amendment claim, and therefore, Plaintiff is subject to "somewhat relaxed standing and ripeness rules." *Id.* at 689. To establish an injury in fact for Article III standing in the pre-enforcement context, Plaintiff must "intend[] 'to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute,'" and demonstrate "a 'credible threat' of imminent enforcement . . . by a government defendant." *Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*, 118 F.4th 505, 518 (2d Cir. 2024) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)); *see also Silva v. Farrish*, 47 F.4th 78, 86 (2d Cir. 2022). In other words, "a plaintiff has standing to make a preenforcement challenge 'when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative.'" *Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979)).

Despite the relaxed standard for establishing an injury in fact, Plaintiff's standing still "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("A plaintiff's burden to demonstrate standing increases over the course of litigation.").

Therefore, "where 'the parties have taken discovery, the plaintiff cannot rest on 'mere allegations,'

but must instead point to factual evidence.'" *Elias Bochner*, 118 F.4th at 519 (quoting *Murthy v.*

*Missouri*, 603 U.S. 43, 58 (2024)).  That increased burden applies even where Plaintiff brings a

pre-enforcement claim.  *Id.* at 522.

### 1.    Intent to Engage in Proscribed Conduct

First, Defendants argue that Evergreen cannot demonstrate its intention to engage in

conduct proscribed by § 203-e.  Dkt. No. 54-9 at 16.  In response, Plaintiff first points to its

assertion in the record that it intends to "take adverse employment action against employees who

choose to procure abortions . . . ."  Dkt. No. 56 at 16.  Second, Plaintiff also contends that it is

likely already violating the law's prohibition on "accessing an employee's personal information

regarding the employee's . . . reproductive health decision making" by asking job applicants about

their experience with abortion.  *Id.* at 17.[6]

Though Plaintiff has stated its intent to violate § 203-e's prohibition on taking adverse

employment actions against its employees based on their reproductive health decisions,

declarations of intent devoid of factual support are insufficient at this stage.  "To show that

Plaintiff[] 'inten[ds] to engage in a course of conduct arguably affected with a constitutional

interest' . . . . 'some day intentions—without any description of concrete plans, or indeed even any

specification of *when* the some day will be—do not support a finding of the actual or imminent

---

[6] Plaintiff also makes a third argument.  § 203-e(3)(b) provides that a Court may "afford injunctive relief against any employer that commits or proposes to commit a violation of the provisions of this section."  Evergreen has stated its intent to violate the law during the course of this litigation. Therefore, Plaintiff argues that it is already in violation of the statute because it has "propose[d] to commit" a violation.  Dkt. No. 56 at 17.  This argument is misguided.  Per the Court's findings below, Plaintiff has not demonstrated a concrete intention to violate the statute.  That the statute provides a method of obtaining injunctive relief does not render moot Plaintiff's obligation to demonstrate its intent to commit an actual violation of the law at this stage of the litigation.

injury that our cases require.'"  *Antonyuk v. Bruen*, 624 F.Supp.3d 210, 234 (N.D.N.Y. 2022) (quoting *Susan B. Anthony List*, 573 U.S. at 163 and *Lujan*, 504 U.S. at 564) (internal quotation marks omitted) (emphasis in original); *see also Brooklyn Branch of NAACP v. Kosinski*, 657 F. Supp. 3d 504, 517 (S.D.N.Y. 2023) ("[i]t is not enough for plaintiffs to plead a vague intention to expose themselves to harm at an indeterminate time[,]" even in the pre-enforcement context).

Here, the circumstances which could lead to Plaintiff violating the statute are far too conjectural and contradict Plaintiff's history.  Plaintiff has never taken adverse action against employees due to their reproductive healthcare decisions.  Dkt. No. 54-9 at 12 (citing Dkt. No. 54-2 at 42, 60-61, 81-82).  Nor has Plaintiff demonstrated that there is a genuine issue of material fact as to whether it has refused to hire job applicants because of their reproductive healthcare decisions.  Dkt. No. 55-7 at ¶ 25 (citing, *inter alia*, Dkt. No. 54-2 at 92-93, 122-23).[7]  Though Evergreen asserts that it has refused to hire candidates in a manner that would violate the statute, the evidence fails to establish as much.  Crucially, Evergreen asserts that it refused to hire certain job applicants "because of their *positions* related to reproductive health decisions[,]" not their actual reproductive health decisions.  Dkt. No. 53-3 at ¶ 25 (emphasis added).  The emails provided by Plaintiff in discovery to support their position instead support this distinction and indicate that the identified job applicants were rejected because of their beliefs, not due to their reproductive health decisions.  *See* Dkt. No. 53-9.[8]  Dr. Harden's deposition testimony regarding future hiring

---

[7] Defendants contend that § 203-e may not cover actions taken toward prospective employees, *see* Dkt. No. 54-9 at 9 n.4, but this Court must construe § 203-e broadly.  "The Supreme Court's opinion in *Susan B. Anthony List* makes clear that courts are to consider whether the plaintiff's intended conduct is '*arguably* proscribed' by the challenged statute, not whether the intended conduct is *in fact* proscribed."  *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022) (emphasis in original).  In making its determination, the Court assumes without holding that § 203-e covers job applicants.

[8] One applicant was not hired because he was not "pro-abstinence."  *Id.* at 1.  Another was not hired because of her "acceptance" of artificial birth control.  *Id.* at 3.  The last applicant identified

decisions further supports this distinction; he testified that if a job applicant had an abortion "*and would do it again*," they would not be hired.  Dkt. No. 53-5 at 6 (emphasis added).  The evidence demonstrates that Evergreen's employment decisions are based on beliefs, not reproductive health decisions, and such employment decisions are not forbidden by § 203-e.  Taken together, Evergreen's admission that it has never taken an impermissible adverse action against an employee, along with its failure to establish that it has ever rejected an applicant on an impermissible basis, suggests that both events are unlikely to occur in the future.

Beyond its failure to identify any past arguably proscribed conduct, Evergreen also admits that it has engaged in conduct which undermines its stated intention to violate the statute. Evergreen concedes that it has hired job applicants who have had abortions in the past and has likely hired applicants who previously took birth control.  Dkt. No. 54-8 at ¶¶ 31-33.  Addressing this fact, Plaintiff points out that though it has hired applicants in the past who have had abortions, it has only done so when those individuals later became pro-life advocates.  Dkt. No. 56 at 15-16. In doing so, Plaintiff asserts "[t]his [scenario] may be as or more common than an abortion decision presenting an obstacle to employment at Evergreen."  *Id.*  If an applicant who has had an abortion but has become a pro-life advocate has been, and can still be, hired, the decision not to hire a similar applicant who did not become a pro-life advocate after having an abortion is based on that applicant's beliefs, not the applicant's reproductive health decisions.  Plaintiff therefore merely bolsters the notion that it has lawfully rejected and will reject applicants due to their beliefs but does nothing to affirm its stated intent to violate the statute.

---

was not hired because she was "pro abortion."  *Id.* at 4.  None of the emails discuss any applicant's personal reproductive health decision-making.

Additionally, other facts demonstrate that Plaintiff's stated intent to engage in proscribed conduct is insufficiently concrete to support standing. First, Plaintiff is satisfied with its current employees and their commitment to its mission, reducing the likelihood of any imminent conduct arguably proscribed by the statute. Dkt. No. 54-8 at ¶ 36. Second, Evergreen screens prospective employees for their commitment to its pro-life mission, suggesting that the possibility of an Evergreen employee procuring an abortion or using birth control is low. Dkt. No. 53-3 at ¶ 22. Third, Plaintiff also admits that it does not generally ask its employees about their reproductive health decisions. Dkt. No. 54-8 ¶ 44; Dkt. No. 56-2 at ¶ 44. Instead, Plaintiff contends that Evergreen might learn of its employees' reproductive health decisions by observing its employees' appearance, through "water cooler" talk with co-workers, or on social media. Dkt. No. 56 at 15. However, given that there is no evidence that these scenarios have occurred in the past, the Court finds it unlikely that these scenarios will occur in the future and that Evergreen would ever have the knowledge necessary to violate the statute by taking action against employees.[9] Fourth, Plaintiff also points to a document called the "EMC Staff Statement of Position, Faith & Principle" which sets out commitments and standards for Evergreen's employees. *Id.* at 10. Notably, the document merely requires that employees "agree[]" to uphold the "position" that "every abortion claims an innocent life." Dkt. No. 53-8 at 1. In contrast, in the portion of the document requiring employees to adhere to affirmative behavioral "standards," Evergreen does not require its employees to agree to never have an abortion or to make other reproductive healthcare decisions.

---

[9] In an attempt to undermine this point, Plaintiff also points out that on appeal, Defendants argued that Evergreen could, in fact, inadvertently discover its employees' reproductive health decisions. *Id.* However, Plaintiff de-contextualizes Defendants' argument on appeal. There, Defendants did not argue that Evergreen's inadvertent discovery of an employee's reproductive health decisions was *likely*, or even plausible, but merely that such circumstances could theoretically lead to a violation of § 203-e. *Slattery v. Hochul*, No. 21-911 (2d Cir.), Dkt. No. 50 at 35. Thus, Defendants' position on appeal is wholly reconcilable with their position here.

*Id.* at 4.  Thus, the "EMC Staff Statement of Position, Faith & Principle" fails to provide the necessary concrete support for Evergreen's intent to violate the statute, and instead, further establishes Evergreen's intent to act on employees' beliefs, not their decisions.[10]

Considering these facts, the hypothetical chain of events which would need to occur to create the conditions for Evergreen to engage in conduct proscribed by the statute is fatally attenuated.  Indeed, Plaintiff has failed to point to a single instance of engaging in the proscribed conduct since its inception in 1985.  Dkt. No. 53-3 at ¶ 7.  As such, Plaintiff cannot point to "concrete plans" to engage in conduct proscribed by § 203-e's prohibition on taking adverse action against employees, or job applicants, based on their reproductive health decisions.

However, Plaintiff has sufficiently demonstrated that it intends to engage in conduct proscribed by § 203-e's prohibition on accessing employees' personal information regarding their reproductive healthcare decision making.  In the course of interviewing job applicants, Plaintiff currently asks prospective employees about their experience with abortion.  Dkt. No. 53-3 at ¶ 23.  Though Plaintiff is not currently hiring new employees, Dkt. No. 54-9 at 12, the record reveals that Evergreen experiences high turnover, Dkt. No. 56-2 at ¶ 46.  Therefore, Plaintiff's intention to inquire into future job applicants' experiences with abortion constitutes a sufficiently "concrete plan" to engage in conduct arguably proscribed by § 203-e.[11]  However, the standing inquiry continues.

---

[10] For the same reasons, though the parties do not discuss it in their arguments regarding standing, the "EMC Staff Statement of Position, Faith & Principle" does not violate the portion of § 203-e which bars employers from requiring employees to "sign a waiver . . . which purports to deny an employee the right to make their own reproductive health care decisions[.]"  § 203-e(2)(b).

[11] Again, the Court assumes without holding that questioning a candidate about their experience with abortion constitutes "accessing an employee's personal information regarding . . . reproductive health decision making."  § 203-e(1).  *See Picard*, 42 F.4th at 98.

### 2.    Credible Threat of Enforcement

Regardless of Plaintiff's stated intention to engage in conduct arguably proscribed by § 203-e, Plaintiff must also establish a credible threat of imminent enforcement by the government. *Elias Bochner*, 118 F.4th at 518.  To establish a credible threat of imminent enforcement, Plaintiff must demonstrate "an actual and well-founded fear that the law will be enforced against" it.  *Am. Booksellers Found. v. Dean*, 342 F. 3d 96, 101 (2d Cir. 2003) (quoting *Vt. Right to Life Comm. v. Sorrell*, 221 F. 3d 376, 382 (2d Cir. 2000)).  Defendants argue that for the same reasons that there is no concrete intent to violate the statute, there is no credible threat of enforcement.  Dkt. No. 54-9 at 17.  In response, Plaintiff points out that the government has not disavowed enforcement and that courts are generally "willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund."  Dkt. No. 56 at 13 (quoting *Hedges*, 724 F.3d at 196).

First, for many of the same reasons that there is no concrete intent to engage in conduct proscribed by the law's prohibition on adverse action based on reproductive health decisions, there is no credible threat of enforcement of that portion of the statute.  As established, the necessary chain of events which might lead to Plaintiff violating the law's prohibition on taking adverse action against employees or prospective employees is too attenuated.  Without a realistic circumstance under which Plaintiff would engage in conduct proscribed by the law, the threat of enforcement is speculative at best.

More fundamentally though, the circumstances surrounding this case and § 203-e are insufficient to suggest that there is a credible threat of enforcement of any part of the statute.[12]

---

[12] In addition to arguing that Plaintiff lacks standing, Defendants argue that Plaintiff's claim is not ripe.  Dkt. No. 54-9 at 14.  Because "the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing[,]" the Court addresses Defendants'

"Although courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund, . . . the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing." *Adam v. Barr*, 792 Fed. Appx. 20, 21 (2d Cir. 2019) (summary order) (citations and internal quotation marks omitted); *see also Brokamp v. James*, 573 F. Supp. 3d 696, 705 (N.D.N.Y. 2021); *Sibley v. Watches*, 501 F. Supp. 3d 210, 222-23 (W.D.N.Y. 2020); *Grant v. Lamont*, 3:22-cv-01223 (JBA), 2023 WL 3749425, at *3-4 (D. Conn. June 1, 2023). Instead, beyond the mere existence of the statute, the Court must also assess "the particular circumstances at issue." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015). In particular, the Court looks to "the past or present enforcement of [§ 203-e] in general" and whether Plaintiff "claim[s] that [§ 203-e has been enforced against [it] in the past []or [whether Plaintiff] has ever been threatened with prosecution." *Adam*, 792 Fed. Appx. at 22-23. Each of these factors weighs against finding a credible threat here. *See Sibley*, 501 F. Supp. 3d at 223 (finding no credible threat of enforcement where plaintiff did not "allege that the statute has been enforced against him in the past or that anyone threatened him with prosecution."). § 203-e has not been enforced against any employer at all, let alone Plaintiff. Dkt. No. 54-9 at 18. Plaintiff has also failed to identify any threatened enforcement, and thus, Plaintiff's

---

arguments under the standing doctrine. *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688. But for many of the same reasons that the Court finds that Plaintiff lacks standing, including Plaintiff's failure to establish a genuine threat of enforcement, it also finds that Plaintiff's claim is not ripe. *See, e.g., Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 134 (2d Cir. 2021) (finding that the plaintiff did not have standing and that the plaintiff's claims were constitutionally unripe "for substantially the same reason."); *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir. 2006) ("it follows that our analysis of [defendant's] standing challenge applies equally and interchangeably to its ripeness challenge."), *abrogated on other grounds by Bond v. U.S.*, 564 U.S. 211, 216 (2011). Because enforcement "depends upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all[,]'" Plaintiff's "claim is not ripe." *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 687 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).

"assertion of standing rests on the mere existence of [§ 203-3]." *Sibley*, 501 F. Supp. 3d at 223. That is not enough.[13]  *See Adam*, 792 Fed. Appx. at 23 (finding the court's assumption "that the government will enforce its own laws" is "not sufficient to confer standing."); *cf. Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (finding credible threat based not only on the existence of the statute but also because the town "announced its intention to enforce the Ordinance" against plaintiffs and gave a specific warning to plaintiffs); *Susan B. Anthony List*, 573 U.S. at 164 (discussing past enforcement measures against the plaintiffs as persuasive evidence of a credible threat).

Therefore, because Plaintiff has failed to allege more than "some day" intentions to violate portions of the statute, and because there is no credible threat of enforcement as to any portion of the statute, the Court finds that Plaintiff lacks standing to assert its claim.  Thus, the Court grants Defendants' Motion and denies Plaintiff's Motion as moot.[14]

## V.    CONCLUSION

Accordingly, the Court hereby

---

[13] That the statute includes a private right of action does not alter this Court's finding that there is no credible threat of enforcement.  There is no evidence in the record of any private suit against any employer based on § 203-e.

[14] Plaintiff also asserts that because the Second Circuit was "unmoved" by Defendants' standing arguments, this Court should find standing.  Dkt. No. 56 at 17.  The Second Circuit did not address standing in its decision.  Moreover, "[a] plaintiff's burden to demonstrate standing increases over the course of litigation." *Cacchillo*, 638 F.3d at 404.  The Second Circuit did not have the benefit of a full record before it on which to assess Plaintiff's intent to engage in conduct proscribed by the statute or the credibility of a threat of enforcement.  Instead, at the motion to dismiss stage, the Second Circuit was left to take at face value Plaintiff's assertions that it would "not hire or retain employees who violate its policies against procuring abortions[.]"  *Slattery*, 61 F.4th at 284. Additionally, at oral argument, the Second Circuit did not have the benefit of the record evidence when considering Plaintiff's claim that the law "chilled" its current expressive association rights. *See* Dkt. No. 56 at 18.  Plaintiff admits that it has changed nothing about its operations and fails to point to a single incidence of the law restraining its employment decisions.  *See* Dkt. No. 54-8 at ¶¶ 47.  Therefore, the argument fails at this stage.

**ORDERS** that Defendants' Motion, Dkt. No. 54, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's Motion, Dkt. No. 53, is **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the

parties in accordance with the Local Rules and close the case.

     **IT IS SO ORDERED.**

Dated: January 31, 2025
      Albany, New York

Anne M. Nardacci
U.S. District Judge